## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ANDREA IDE, on behalf of herself and all other persons similarly situated, known and unknown, <br><br> Plaintiff, <br><br> v. <br><br> NEIGHBORHOOD RESTAURANT PARTNERS, LLC, and APPLE CREEK MANAGEMENT COMPANY, INC. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:13-CV-00509-SCJ |

## DEFENDANT NEIGHBORHOOD RESTAURANT PARTNERS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO AUTHORIZE NOTICE TO SIMILARLY-SITUATED PERSONS PURSUANT TO 29 U.S.C. § 216(b)

Plaintiff Andrea Ide claims that Neighborhood Restaurant Partners, LLC ("NRP") violated the tip credit provision of the Fair Labor Standards Act (FLSA) by allegedly requiring servers, bartenders, and hosts to perform duties unrelated to their tipped occupations and by failing to notify them of the tip credit provision.  After a year of litigation, Plaintiff seeks to conditionally certify a class of current and former tipped employees at 40 different restaurants based on the testimony of two employees from one restaurant.  Plaintiff's motion should be denied.

1

16788755v.11

Plaintiff has not identified a common policy or practice requiring tipped employees to perform duties that are unrelated to their tipped occupations.  To the contrary, under NRP's labor policy, which it inherited from the prior owner of the restaurants, "[c]omprehensive cleaning, scrubbing the floors, maintenance, food prep etc. must be compensated at minimum wage or greater at all times."  (Ex. A: July 18, 2011 Email from S. Klaus).  Not surprisingly, Plaintiff ignores this policy.  Instead, she relies on misleading or inapplicable sound bites from the depositions.  Plaintiff, for example, opens her motion by claiming, "We had to scrub toilets."  (Pl. Br. at 2.)  Yet she testified that this alleged practice ended in 2010 -- outside of the limitations period and before NRP acquired the restaurants in October 2011.  (Ex. B:  Deposition of Andrea Ide at 111:20-112:10) (hereinafter, "Ide Dep. at __").  Plaintiff also admitted that she never saw anyone scrub toilets at other restaurants.  (*Id.* at 139:1-19.)

Nor should Plaintiff's notice claim be conditionally certified.  Although Plaintiff claims that she was not informed of the tip credit, she admitted that her manager told her about the tip credit shortly after she was hired, that the restaurant displayed posters describing the tip credit, and that NRP's employee handbook describes the tip credit.  The undisputed evidence also shows that NRP's other tipped employees were informed of the tip credit in various ways.  Thus, neither of Plaintiff's claims is susceptible to collective action treatment.

I.      **FACTUAL BACKGROUND**

    A.      **The Parties**

NRP operates 40 Applebee's restaurants in the State of Georgia that it acquired from Apple Creek Management Company, Inc. ("Apple Creek") on October 12, 2011. (Ex. C: 30(b)(6) Deposition of Dana Buck and Arthur Everson at 10:13-21, 74:1-4) (hereinafter, "Buck/Everson Dep. at __".)

Apple Creek hired Plaintiff in May 2002.  (Ide Dep. at 21:17-25).  During her employment with Apple Creek, and then with NRP, Plaintiff worked as a host, server, and bartender, in which she received a subminimum hourly wage rate of pay plus tips. (*Id.* at 22:2-12, 23:3-7, 23-25-24:1-4, 14-18; 25:4-5, 28:12-15).  When Plaintiff did not work a server, bartender, or host shift, she was paid $7.25 or more per hour.  (Ide Dep. at 24:24-25; 25:4-5, 20-22; 78:5-79:2).  Plaintiff's pay stubs reflect the pay codes under which she clocked-in and the hourly rate of pay she received for those duties during each pay period.  (*Id.* at 33:2-14).  In February 2013, Plaintiff resigned from the Lawrenceville restaurant, where she had worked almost exclusively during her employment with Apple Creek and NRP.  (*Id.* at 21:5-11, 22:1-12).

    B.      **NRP's Tipped Employees and Notice of the Tip Credit**

NRP utilizes the tip credit when, and only when, its employees are working in tipped positions. (Ex. I: Excerpt from NRP Handbook, pp. 22-23).  When combined with their tips, "tipped employees" typically take home well in excess of minimum

3

wage.  (*See*, *e.g.*, Ex. D: Bell Decl. ¶16 (average of $10 per hour in tips serving); Ex.

E: Bryson Decl. ¶ 10 (average of $10 per hour in tips bartending); Ex. F: Carden Decl.

¶ 3 ($10 to $13.75 per hour in tips serving, and up to $25.00 bartending); Ex. G:

Cunningham Decl. ¶ 6 (nearly $6.43 per hour in tips on a slow day bartending, but

over $18.50 on a busy day); Ex. H: Mast Decl. ¶ 18 (average of $12.85 per hour in tips

serving, and $7.15 per hour hosting)).  NRP informs its tipped employees of the tip

credit in various ways.

First, employees may be told verbally.  Plaintiff, for example, testified that

shortly after she was hired her manager explained that she "got paid less than

minimum wage because [her] tips . . . would average out to above minimum wage."

(*Ide* Dep. at 54:4-20).

A second way employees may receive notice of the tip credit is through NRP's

Associate Handbook and Orientation Guide, first issued in April 2012, which retains

the "Tip Credit for Tipped Employees" section from Apple Creek's Associate

Handbook and states:

> Federal wage and hour law allows tips to be considered in an associate's
> total compensation. The law requires that all associates be paid at least
> minimum wage.  Tips can be considered part of this wage, although the
> federal law requires:
>
>> "Employers of tipped employees must pay a cash wage of at least
>> $2.13 per hour if they claim a tip credit against their minimum
>> wage obligation.  If an associate's tips combined with the cash

4

> wage of at least $2.13 per hour do not equal the minimum wage, the
> employer must make up the difference."

(Excerpt from NRP Handbook, pp. 22-23; Ide Dep. at 37: 2-7).  Plaintiff claims she

does not remember reading this section of the Apple Creek or NRP Handbooks, but

concedes that the Handbooks discuss the tip credit.  (Ide Dep. at 90:10-19).  Moreover,

unlike Plaintiff, Opt-in Plaintiff Kaitlyn McLaughlin ("Opt-in McLaughlin") admits

that she read her handbook, which includes the tip credit provision, during orientation

and five to 10 more times during her employment.  (Ex. J: Deposition of Kaitlyn

McLaughlin at 62:10-63:23)(hereinafter, "Mclaughlin Dep. at __").

A third way employees receive notice of the tip credit is through two separate

posters.  The first poster was issued by the Wage and Hour Division of the U.S.

Department of Labor and informs employees of the tip credit.  (Ex. K: U.S.

Department of Labor Poster - Employee Rights Section).  The second poster was

created by Apple Creek, and quotes the law regarding the use of the tip credit.  (Ex. L:

Apple Creek Generated Tip Credit Poster).  Both of these posters were displayed in the

restaurants, including in Lawrenceville, during the relevant period.  (Ide Dep. at 90:21-

91:8; Bell Decl. ¶ 7; Carden Decl. ¶ 6; Cunningham Decl. ¶ 9; Ex. M: Parks Decl. ¶ 6).

A fourth way servers may receive notice of the tip credit is through a document

titled "Tip Sharing Agreement," which is kept in an employee's new hire folder, and

states "I understand that if my regular hourly wage is less than the standard minimum

wage, a percentage of the tips I receive are used by my employer to satisfy minimum wage requirements."  (Buck/Everson Dep. 122:9-123:13; Ex. N: Tip Sharing Agreement).

A fifth way employees may receive notice of the tip credit is through a document titled "Notice to Employees Who Receive Tips," which states:

> The U.S. Department of Labor recently amended its tip credit notice regulations, effective May 5, 2011, to require employers to inform tipped employees of certain tip credit information.  We are informing you of the following as a result of this new requirement:
>
> - The amount of cash wage to be paid to you per hour will be $____
>
> - Assuming you have received a sufficient amount of tips to cover the tip credit, the amount of your tips per hour to be credited as wages will be $____.
>
> - You have the right to retain all the tips you receive, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.  The tip credit being taken is only on the amount you actually receive and your tips will otherwise not be retained except for your contribution to the tip pool.
>
> - The tip credit shall not apply unless you have been informed of these requirements.
>
> You are being provided this information in accordance with Section 203(m) of the Fair Labor Standards Act.  Please sign and date this notice indicating that you understand it and return it to your manager.  Contact Human Resources at 770-623-0360, Ext. 268, if you have any questions.

(Ex. O: Notice to Employees Who Receive Tips).  Plaintiff acknowledges this Notice informs tipped employees of all the requirements of Subsection 203(m), but claims that there is no evidence that this document has been used to inform other tipped

employees of the tip credit.  (*See* Pl. Br. at 23).  To the contrary, employees began

receiving this Notice shortly after the U.S. Department of Labor amended its tip credit

regulations in 2011.  (Ex. P: Buck Decl. ¶ 5; *see also*, Bell Decl. ¶¶ 4, 6; Bryson Decl.

¶ 3; Carden Decl. ¶ 4-5; Cunningham Decl. ¶ 7-8; Ex. Q: Franklin Decl. ¶ 6; Ex. R:

Graziani Decl. ¶¶ 3-4; Mast Decl. ¶¶ 4-7; Parks Decl. ¶¶ 4-5; Ex. S: Phillips Decl. ¶¶

3-4; Ex. T: Swinks Decl. 4; Ex. U: Webb Decl. ¶¶3-4; Ex. V: Workman Decl. ¶ 4).

**C.    Duties of Tipped Employees**

NRP's servers are responsible for serving food, drinks, and accommodating

guests' needs.  (Ide. Dep. at 61:5-22; Ex. W: NRP Server Pos. Desc.).  According to

Plaintiff, the main duties she performed as a server are accurately reflected in NRP's

server position description  (Ide Dep. at 61:1-66:1).  These duties include, for example,

greeting guests, answering questions, making suggestions regarding food, drinks and

service, interacting with guests, delivering food and drinks, observing guests and

responding to any additional requests, and maintaining all opening, running, and

closing sidework.  (*Id.*)

NRP's bartenders are responsible for serving alcoholic and non-alcoholic drinks,

and food to guests.  (*Id.* at 66:14-22; Ex. X: NRP Bartender Pos. Desc.).  Plaintiff

admits that NRP's position description accurately characterizes the job functions she

performed as a NRP bartender.  (Ide Dep. at 66:5-72:4).  These include such duties as

promptly welcoming each guest to the bar, communicating with guests, serving food and drinks to all bar guests, mixing ingredients to prepare alcoholic and non-alcoholic beverages for all guests, being attentive to guests and responding to any additional requests, and keeping the bar area clean, sanitized and stocked.  (*See id.*)

NRP's hosts are responsible for greeting guests, seating and presenting clean menus to guests, and assisting and maintaining overall guest flow of the restaurant. (Ide Dep. at 73:2-7; Ex. Y: NRP Host Pos. Desc.).  According to Plaintiff, NRP's host position description, which includes such tasks as greeting and seating guests, making suggestions pertaining to current promotions, accommodating special needs of guests, managing the wait list and seating chart, and ensuring that that dining area remained clean and that the restaurant operated smoothly, accurately reflects the main duties she performed in that position.  (Ide Dep. at 73:12-77:2).

### D.     NRP Prohibits Employees From Performing Duties Of Non-Tipped Positions While Being Paid A Tip Credit Rate

On July 18, 2011, less than three months before NRP acquired Apple Creek, Stan Klaus, President of the Applebee's Division for Apple Creek, sent the following e-mail to all restaurant management and senior management reminding them of its policy regarding tipped employee labor (Ex. A: July 18, 2011 Email from S. Klaus):

> This is a reminder of [our] policy regarding employee labor.  Please review this with all members of your Management Team and ensure adherence by all.
>
> ***

> 4)    Tipped employees may only perform sidework and duties related to tip producing and should spend no more than 20% of their total working time performing these guest related duties during operating hours.
>
> ***Comprehensive cleaning, scrubbing the floors, maintenance, food prep etc. must be compensated at minimum wage or greater at all times.***

(*Id.*) (emphasis added).  The expectations set forth in Klaus' e-mail remain in force. (Buck/Everson Dep. at 22:9-20).  Furthermore, in January 2013, NRP implemented its "See You Tomorrow Dedicated Hospitality Policy," which reiterates that employees may not perform specific tasks while being paid a tip credit rate, such as cleaning restrooms and food preparation.  (Ex. Z: Excerpt from See You Tomorrow Policy).

In addition to prohibiting tipped employees from performing certain duties at below minimum wage, NRP's policy expressly limits the amount of time that tipped employees may spend on duties related to their tipped position:

> Tipped service associates must spend the majority of their time servicing guests. Tip credit can be taken, however, for the time spent by service associates performing "front of the house" opening and closing duties (maximum of 30 minutes before or after shift).  These Guest services duties include cleaning and restocking items in the service areas.  A tipped service associate should spend no more than 20% of their total working time performing these Guest service related duties during operating hours.

(NRP Handbook, p. 23).  Apple Creek had an identical policy in place prior to NRP's acquisition of the 40 Georgia restaurants.  (*See* Ex. AA: Excerpt from Apple Creek's Handbook, p. 26).  "See You Tomorrow" decreases the amount of time tipped

employees may spend on sidework[1] from 20% of their shift to a maximum of 15% because it "requires all Servers, Bartenders and Hosts to dedicate a minimum of 85% of their time worked to creating A Great Guest Experience." (Exhibit BB: See Your Tomorrow Dedicated Hospitality Policy Acknowledgment).

Plaintiff admits that the sidework checklists in her restaurant were created by her and other trainers in her restaurant (not NRP), that she did not distribute or provide the lists to employees at any other restaurants, and that, as far as she knows, the lists were only displayed at the Lawrenceville location. (Ide Dep. at 117:21-119:25).

Additionally, although Plaintiff claims that she performed duties unrelated to her tipped occupations, her alleged experience was different from the experiences of other tipped employees who worked at her restaurant and at five different NRP locations, and who have *not* performed these duties at below minimum wage:

- Preparing or cooking food (Bell Decl. ¶ 9; Ex. CC: Brown Decl. ¶7; Bryson Decl. ¶ 5; Carden Decl. ¶ 8; Cunningham ¶¶ 11, 16; Franklin Decl. ¶ 9; Graziani Decl. ¶ 6; Mast Decl. ¶ 10; Parks Decl. ¶ 8; Phillips Decl. ¶ 7; Swinks Decl. ¶ 7; Webb Decl. ¶¶ 10, 16; Workman Decl. ¶¶ 9, 14)

- Cleaning the parking lot (Bell Decl. ¶ 10; Brown Decl. ¶ 11; Bryson Decl. ¶ 5; Carden Decl. ¶ 9; Franklin Decl. ¶ 12; Graziani Decl. ¶ 8; Mast Decl.

---

[1] Sidework is one of many duties NRP's tipped employees typically perform, and is important because it makes responding to guests needs easier and more efficient. (*See, e.g.*, Franklin Decl. ¶ 16 (explaining that sidework helps her be more efficient and respond to guests' needs quicker)).

¶ 11; Parks Decl. ¶ 9; Phillips Decl. ¶ 10; Swinks Decl. ¶ 6; Webb Decl. ¶ 14)

- Washing dishes (Bell Decl. ¶ 11; Carden Decl. ¶ 10; Cunningham Decl. ¶ 15; Franklin Decl. ¶ 10; Graziani Decl. ¶ 9)

- Taking out the garbage (Brown Decl. ¶ 12; Carden Decl. ¶ 11; Graziani Decl. ¶10; Swinks Decl. ¶ 10; Webb Decl. ¶ 15)

As it relates to general cleaning, tipped employees are generally not called on to do this type of work because an employee called a General Utility or GU (who is a dedicated cleaning person), being paid at least $7.25 per hour, performed such tasks. (Brown Decl. ¶ 13; Parks Decl. ¶ 15; Swinks Decl. ¶ 10).  If cleaning or duties outside of their tipped occupation must be completed, tipped employees can clock-in under a "cleaning" or other job code that is paid at least minimum wage.  (*See* Bryson Decl. ¶¶ 4, 7; Carden Decl. ¶ 11; Cunningham Decl. ¶¶ 5, 10, 14; Franklin Decl. ¶ 11; Graziani Decl. ¶¶ 5, 11; Mast Decl. ¶ 13; Parks Decl. ¶ 12; Workman Decl. ¶¶ 8, 12).

## ARGUMENT

### A.    Conditional Certification Is Not Automatic

Plaintiff's recitation of the standard of review falsely suggests there is an automatic presumption in favor of conditional certification.  But "automatic preliminary class certification is at odds with the Supreme Court's recommendation to 'ascertain the contours of the action at the outset.'"  *Bosley v. Chubb Corp.*, No. 04-4598, 2005 U.S. Dist. LEXIS 10974, at *9-10 (E.D. Pa. June 3, 2005) (*quoting*

*Hoffman La-Roche, Inc. v. Sperling*, 495 U.S. 165, 171-72 (1989)); *see also Brooks v. BellSouth Telecomm's, Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995), *aff'd* 114 F.3d 1202 (11th Cir. 1997). Instead, before conditional certification is granted, Plaintiff bears the "burden of demonstrating a 'reasonable basis' for [her] claim" that the case should be certified as a collective action -- a burden that is not invisible, and cannot be sustained "only by counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (quoting *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)).

To meet her burden, Plaintiff must show there are other employees who wish to opt-in to this action, and that the potential opt-ins are "similarly-situated" to her. *Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1297 (N.D. Ga. 2012) (citing *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001)). In this case, the Court should take a more searching look at evidence provided by Plaintiff and Defendants because "[t]he rationale for the 'fairly lenient standard' … disappears … once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures." *Id.* at 1297-98 (quoting *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (finding that "a more searching standard of review [was] appropriate" where plaintiffs "had

12

time to conduct discovery and … marshal their best evidence")); *see also White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002) (stressing that because the plaintiff had conducted discovery regarding the defendant's policies, "the court deems it necessary to carefully consider the submissions of the parties with respect to the class allegations")).  This is precisely the case here, where over the course of the past year, the parties have completed written and oral discovery regarding NRP's policies and Plaintiff's claims.  Nonetheless, Plaintiff has fallen far short of meeting her burden.

### B. Plaintiff Has Not Identified A Common Policy Or Practice Requiring Tipped Employees To Perform Duties That Are Unrelated To Their Tipped Occupation

Plaintiff claims that NRP violated the tip credit provision of the FLSA by allegedly requiring servers, bartenders, and hosts to perform duties unrelated to their tipped occupations.  Put differently, Plaintiff claims NRP required its tipped employees to perform "dual jobs."  Plaintiff believes that NRP should have compensated its tipped employees at minimum wage for any time spent on these alleged unrelated duties, regardless of the percentage of time they spent on such duties.  Plaintiff bears the burden of showing that she and the class "were not performing their tipped occupations for at least a portion of their shift."  *Driver v. AppleIllinois, LLC,* 890 F. Supp. 2d 1008, 1029 (N.D. Ill. 2012).

To support her motion, Plaintiff relies on her and Opt-in McLaughlin's deposition testimony.  Their testimony, however, cannot be evidence of a common policy or practice across NRP's 40 restaurants since they worked almost exclusively at the Lawrenceville location.  Moreover, the "unrelated" duties that they allegedly performed were in fact related to their tipped occupations or occurred outside of the limitations period.  The only other evidence that Plaintiff offers are sidework lists.  Not only are these lists inadmissible, but they are not evidence of a common policy or practice that violates the FLSA.  What's more, the evidence submitted by NRP shows that Plaintiff's alleged experience was uncommon, if it happened at all.

### 1.    Plaintiff Does Not Identify A Policy Or Practice That Required Tipped Employees To Perform "Dual Jobs"

Plaintiff relies heavily on her deposition testimony and the testimony of Opt-in McLaughlin to support her claim that NRP had a common policy or practice of requiring its tipped employees to perform dual jobs.  Plaintiff does not offer sworn testimony from the other opt-in plaintiffs or any other current or former employees.  The testimony cited by Plaintiff falls far short of showing a companywide policy or practice that violated the FLSA.

First, Plaintiff's and Opt-in McLaughlin's testimony only speaks to their individual experiences.  But evidence that some employees were not compensated for work is insufficient to merit conditional certification.  *Thompson v. Speedway*

14

*Superamerica LLC*, No. 08-cv-1107, 2009 U.S. Dist. LEXIS 3816, at *2-3 (D. Minn. Jan. 20, 2009).  Rather, Plaintiff must offer evidence that "the reason why the employees were not compensated . . . is not because of human error or a rogue store manager, but because of a corporate decision to ignore [defendant's] published policies and refuse to pay for [certain tasks]."  *Id.* at *3; *see also Saleen v. Waste Management, Inc.*, No. 08-cv-4959, 2009 U.S. Dist. LEXIS 49891, at *21-22 (denying motion for conditional certification where 112 declarations failed to show that the reason why employees worked off the clock was due to a single decision, policy, or plan).

Similarly, their testimony only addresses the alleged practices at a single restaurant.  Although Plaintiff briefly filled in at the Sugar Hill restaurant in 2003, she almost exclusively worked in Lawrenceville.  Opt-in McLaughlin only worked in Lawrenceville.  They do not have any personal knowledge of the operations at the other thirty-nine restaurants at issue here.  To the extent these former employees testified about companywide practices, their statements were merely conclusory.  The Court should not consider this testimony.  *See Wacker v. Personal Touch Home Care, Inc.*, No. 4:08-cv-93, 2008 U.S. Dist. LEXIS 101078, at *10-12 (E.D. Mo. Nov. 5, 2008) (requiring plaintiff to rely on competent evidence and not a conclusory affidavit from a former manager who lacked personal knowledge of defendant's office outside of Missouri); *West v. Border Foods, Inc.*, No. 05-cv-2525, 2006 U.S. Dist. LEXIS

15

96963, at *18-19 (D. Minn. July 10, 2006) (eliminating averments that were not based on personal knowledge or were conclusory).

More importantly, even if Plaintiff and Opt-in McLaughlin had provided more detail, their evidence would only show that two out of approximately 4,875 current and former tipped employees—considerably less than one percent of the potential class—were allegedly required to perform work unrelated to their tipped occupations.  (*See* Buck Decl. ¶ 3).  "Such a limited sampling of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan." *West,* 2006 U.S. Dist. LEXIS 96963, at *19; *see also Thompson,* 2009 U.S. Dist. LEXIS 3816, at *7 ( "if [defendant] had really made a corporate decision to refuse to pay about 8,000 putative class members for answering work-related phone calls . . . then one would expect that more than a handful of those 8,000 putative class members would complain of being cheated by [defendant]"); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005) (averments from two employees out of a potential class of 300 were not enough to conditionally certify a class); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (evidence concerning defendant's pay practices with respect to two out of fifty putative class members did not amount to "even a 'modest factual showing' of a common policy or plan").

Moreover, many of the tasks identified by Plaintiff and Opt-in McLaughlin were related, to their duties as a server, bartender, or hosts and thus are not outside the tipped occupation.  For example, they claim they had to clean and set tables, make coffee and tea, occasionally wash dishes,[2] clean and vacuum their stations, and fill salt and pepper shakers.  As explained by the regulations to the FLSA and the DOL's interpretive guidance, however, such activities are *related* to a tipped occupation.  The dual jobs regulation specifically identifies a server's "time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" as duties that are related to her tipped occupation.  29 C.F.R. § 531.56(e) (explaining that "[s]uch related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips").  Similarly, the DOL's Handbook recognizes that servers may spend time on "maintenance and preparatory or closing activities," such as cleaning and setting tables, making coffee, and occasionally washing dishes or glasses.  U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988) (available at http:// www. dol.gov); *see also* U.S. Dept. of

---

[2] To be clear, neither Plaintiff nor Opt-in McLaughlin ever worked a dishwasher shift. Instead, every restaurant has a General Utility (GU) employee who is responsible for washing dishes.  Nonetheless, some servers may push a rack of glasses or silverware through the dishwasher.  This process takes seconds to a few minutes to complete and, as one server described it, is "easier than a dishwasher at home."  (Mast Decl. ¶ 12).

Labor Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act, Revised March 2011 (same) (available at http://www.dol.gov).[3]

Recently, in *Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995 (N.D. Ind. 2013), the court refused to conditionally certify a virtually identical claim. The plaintiff claimed that tipped employees were required "to perform dishwashing, food preparation, kitchen and bathroom cleaning, trash removal, and other duties outside the scope of the tipped occupations, while paying those employees at the tip-credit wage rate." *Id.* at 999. The court concluded that plaintiff's claim was "based on a faulty legal conclusion."

> Servers, bartenders, and hosts – who directly relate[] with customers – are not also employed in the second occupation of dishwasher, cook, or janitor simply because an unspecified amount of time during their shift is spent performing the duties cited in the amended complaint: 'dishwashing, food preparation, kitchen and bathroom cleaning, [and] trash removal.'

*Id.* at 1001. The court relied on the dual jobs regulation and the DOL's guidance, all of which confirm that such duties are related to a servers' occupation. *Id.* at 1001-03.

---

[3] In some Circuits, tipped employees cannot spend more than 20% of their time on duties that are related to a tipped occupation without being tip producing themselves. *E.g., Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011). Plaintiff, however, has not made such a claim in this case because such a claim is foreclosed by binding Eleventh Circuit precedent. *Pellon v. Business Representation Int'l, Inc.*, 291 Fed. Appx. 310 (11th Cir. 2008), affirming 528 F. Supp. 2d 1306, 1313-15 (S.D. Fla. 2007).

Plaintiff also contends that any tasks performed while the restaurant is closed are unrelated to a tipped occupation.  Again, Plaintiff's claim has been rejected by the DOL.  In an Opinion Letter, the DOL addressed whether certain tasks that servers in a restaurant performed after closing still qualified for the tip credit.  U.S. Dept. of Labor, Wage and Hour Division, Opinion Letter WH-502, 1980 DOLWH LEXIS 1 (March 28, 1980).  The DOL concluded that time spent by servers after the restaurant closed cleaning the salad bar, placing condiment crocks in the cooler, cleaning and stocking the waitress stations, cleaning and resetting the tables (including filling cheese, salt and pepper shakers), and vacuuming the dining room carpet "constitute tipped employment within the meaning of the regulation."  *Id.*  Put differently, the DOL concluded that the servers were not engaged in dual jobs while they were performing the "after-hours clean-up."  *Id.*  Accordingly, if  the activities that Plaintiff describes were part of a policy, plan, or practice, it was not one that would violate the FLSA, and therefore cannot be the basis for a collective action.  *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 548 (6th Cir. 2006) (plaintiff must show that it and others "were victims of a common policy or plan that *violated the law*"); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp.2d 459, 467 (S.D.N.Y. 2008) (emphasis added) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (collecting cases)); *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp.2d 873, 878-79 (E.D. La. 2008) (refusing to

19

grant conditional certification because plaintiff provided inadequate evidence of a "single [company] decision, policy, or plan that violated the law").

Plaintiff and Opt-in McLaughlin also testified that they sometimes had to perform "expo" and "to-go" work.  As part of a server's job, servers will "expo" or expedite food by taking it off the upper or "hot" counter and then add any garnishes before taking it to their customers.  "To-go" work simply involves taking carryout orders by phone or in person and delivering the food to customers.  These tasks clearly are part of a server's, bartender's, or host's job, and not that of a janitor, dishwasher, or maintenance employee.  *See, e.g., Townsend v. BG-Meridian, Inc.*, No. CIV-04-1162-F, 2005 U.S. Dist. LEXIS 45200, at *19 (W.D. Okla. Nov. 7, 2005) (finding that the server's "cash register and phone duties were merely related duties incident to her waitress position").

Yet Plaintiff suggests that "expo" and "to-go" work is a separate and distinct job because NRP occasionally pays employees minimum wage for this work.  But NRP only pays minimum wage for "expo" work when employees do not have their own customers.  On a busy night, for example, an employee may do nothing but "expo" food for other servers.  Because that employee does not have her own customers and will not receive tips, NRP pays that employee at or above minimum wage.  Although NRP chooses to pay at least minimum wage when someone works a "to-go" shift, that

work is clearly tipped work.  As one declarant testified, "Probably 90% of the customers who place to-go orders give me a tip when they pick up their food." (Swinks Decl. ¶ 5.)  Moreover, even if "expo" and "to-go" were a minimum wage job, NRP would not need to pay its tipped employees minimum wage when they perform this work.  *See Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1313 (S.D. Fla. 2007), *aff'd,* 291 Fed. App'x 310 (11th Cir. 2008) (finding that the plaintiffs' duties were part of the normal duties of a skycap, and not those of another occupation, even if there was some overlap among tasks between different jobs).

Indeed, the only work that Plaintiff and Opt-in McLaughlin allegedly performed that fell outside the scope of their tipped occupations is bathroom cleaning and cooking bacon.  Plaintiff's motion, however, is misleading.  Although a central theme of Plaintiff's motion is her claim that servers had to "clean bathrooms" and "scrub toilets," both Plaintiff and McLaughlin testified that this alleged practice ended in 2010 -- outside the limitations period and before NRP acquired Apple Creek.  (Ide Dep. at 112:1-15; McLaughlin Dep. at 50:3-18; 51:8-14, 21-24).  Nor did employees ever "cook" bacon.  (Brown Decl. ¶ 7 (heating bacon done by kitchen employees); Parks Decl. ¶ 8 (same); Swinks Decl. ¶ 7 ("Tipped employees are not even allowed 'behind the line'")).  Instead, to set up the salad bar, the opening server at the Lawrenceville location used to occasionally microwave pre-cooked and pre-cut bacon.  (*See* Franklin

21

Decl. ¶ 9)  The entire process took less than 30 seconds and was only done once a day. (*See id.*).  Moreover, this practice ended several years ago because of operational changes in the restaurants.  (*Id.* ("no tipped employees have microwaved bacon for about three years in the Lawrenceville restaurant")).

The testimony given by Plaintiff and Opt-in McLaughlin does not establish that NRP employed them, let alone other employees, in the "second occupation" of a cook, dishwasher, or janitor.  Simply put, the regulations, the DOL's interpretive guidance, and the case law "lend no merit to the Plaintiff's proposition that duties like food preparation and general cleaning around the dining room cannot be incidental to the regular duties of a server."  *Roberts*, 945 F. Supp. 2d 1002.

## 2.    The Sidework Lists Are Not Evidence of A Single Decision, Policy, or Plan That Violates the FLSA.

Plaintiff also relies on numerous sidework lists to support her motion.  But Plaintiff does not explain what restaurant or what time period to which they apply, if any.[4]  Moreover, until See You Tomorrow, NRP did not have a uniform list of sidework.  Instead, managers at each of the 40 restaurants were free to prepare their own lists, if any.  The sidework lists attached to the Amended Complaint, for example, were prepared by Plaintiff and only used at the Lawrenceville restaurant.

---

[4] In response to Plaintiff's discovery requests, NRP collected and produced various sidework lists.  The sidework lists were in storage or in boxes found at the restaurants. NRP does not know when the lists were prepared or utilized.

22

Although there is no evidence that tipped employees actually performed the activities described in the lists during the limitations period, the lists merely describe duties that are related to a server's, bartender's, or host's job.  "Sidework" consists of tasks performed in server, bartender, and host areas that enable employees to respond quickly and efficiently to customer needs and improve customers' overall experience. The lists, for example, describe duties such as cleaning tables, stocking cups, to-go boxes, and straws, making coffee and tea, and bringing menus to the front.  As discussed above, these "maintenance and preparatory or closing activities" are related to a server's, bartender's, or host's tipped occupation, even if they are not directed toward producing tips.  U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988).

Moreover, any "general" or "heavy" cleaning performed by tipped employees has always been compensated by Apple Creek and NRP at or above minimum wage. On July 18, 2011, Stan Klaus, (former) President of the Applebee's Division for Apple Creek, described this policy in an e-mail to all restaurant management and senior management:

> This is a reminder of [our] policy regarding employee labor.  Please review this with all members of your Management Team and ensure adherence by all.
>
> ***

> 4)      Tipped employees may only perform sidework and duties related to tip producing and should spend no more than 20% of their total working time performing these guest related duties during operating hours.
>
> Comprehensive cleaning, scrubbing the floors, maintenance, food prep etc. must be compensated at minimum wage or greater at all times.

(Ex. A).  Not surprisingly, Plaintiff's Motion fails to mention this policy.

Accordingly, the only evidence of a common policy shows that Apple Creek and NRP paid tipped employees at or above minimum wage for any work that potentially was outside the scope of their tipped occupations.

### 3.      Tipped Employees' Testimony Shows Significant Differences Among Potential Class Members

The thirteen declarations of tipped employees from six different restaurants offered by NRP establish even further differences between the potential members of the proposed collective action.  *See generally* Section I.D, *supra.*  The declarations highlight that Plaintiff's alleged experiences were the exception, rather than the rule.

Specifically, the declarants testified that they never performed the following duties at a tip-credit wage: cleaning or restocking restrooms (Brown Decl. ¶ 6; Carden Decl. ¶ 7; Franklin Decl. ¶ 7; Parks Decl. ¶ 15; Phillips ¶ 6; Swinks Decl. ¶ 6; Webb Decl. ¶ 8); mopping or vacuuming floors (Bell Decl. ¶ 12; Bryson Decl. ¶¶ 7, 13; Carden Decl. ¶ 11; Cunningham Decl. ¶ 14; Franklin Decl. ¶ 11; Mast Decl. ¶ 13; Parks Decl. ¶¶ 12, 15; Swinks Decl. ¶ 10; Webb Decl. ¶ 12; Workman Decl. ¶ 12); scrubbing walls (Carden Decl. ¶ 11; Bryson Decl. ¶ 7; Mast Decl. ¶ 13; Parks Decl. ¶

12; Webb Decl. ¶ 12); washing dishes (Bell Decl. ¶ 11; Carden Decl. ¶ 10;

Cunningham Decl. ¶ 15; Franklin Decl. ¶ 10; Graziani Decl. ¶ 9); cleaning the parking

lot (Bell Decl. ¶ 10; Brown Decl. ¶ 11; Bryson Decl. ¶ 5; Carden Decl. ¶ 9; Franklin

Decl. ¶ 12; Graziani Decl. ¶ 8; Mast Decl. ¶ 11; Parks Decl. ¶ 9; Phillips Decl. ¶ 10;

Swinks Decl. ¶ 6; Webb Decl. ¶ 14); taking trash out; preparing or cooking food,

including bacon (Bell Decl. ¶ 9; Brown Decl. ¶7; Bryson Decl. ¶ 5; Carden Decl. ¶ 8;

Cunningham Decl. ¶¶ 11, 16; Franklin Decl. ¶ 9; Graziani Decl. ¶ 6; Mast Decl. ¶ 10;

Parks Decl. ¶ 8; Phillips Decl. ¶ 7; Swinks Decl. ¶ 7; Webb Decl. ¶¶ 10, 16; Workman

Decl. ¶¶ 9, 14); cleaning behind the tables or booths (Carden Decl. ¶ 11; Webb Decl. ¶

12).  To the contrary, and consistent with the policy articulated by Klaus, the

declarants were paid at least minimum wage when they performed general cleaning,

like mopping restrooms and cleaning behind booths.  (*See*, *e.g.*, Bryson Decl. ¶ 4;

Carden Decl. ¶¶ 7, 11; Cunningham Decl. ¶ 14; Webb Decl. ¶ 7; Workman Decl. ¶ 8).

These declarations show that the alleged unrelated duties performed by Plaintiff and

Opt-in McLaughlin (if, given their conclusory nature, they are believed) were isolated

occurrences and atypical of the experience of the class Plaintiff seeks to certify.

### C.    Plaintiff Has Not Shown A Common Policy Or Practice To Fail To Notify Tipped Employees Of The Tip Credit

Plaintiff claims that NRP failed to provide her and other tipped employees with

adequate notice of the tip credit provisions of the FLSA found at 29 U.S.C. §203(m).

Subsection 203(m) provides that the tip credit shall not apply "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

Courts to consider the issue have come to different conclusions about the notice that satisfies Subsection 203(m)'s "inform" requirement.  In *Hardwick v. Complete Skycap Services, Inc.*, No. 04-CV-88 (D. Ariz. 2005), *aff'd*, 2007 WL 2050867 (9th Cir. July 13, 2007), for instance, the court held that explaining that plaintiffs would receive $2.13 per hour and the remainder of their pay would be in tips satisfied the notice requirement of Section 203(m).  In *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 299 (6th Cir. 1998), the court held that defendant adequately provided notice where it distributed a file folder containing various written materials, including a statement describing the tip policy and stating "tips will be used as a credit against the minimum wage as permitted by federal and/or state law."  And, in *Marroquin v. GMRI, Inc.*, No. 11-cv-21804, 2011 U.S. Dist. LEXIS 145150, at *9-10 (S.D. Fla. Dec. 16, 2011), the court held that the claim that the employer satisfied the notice requirement of Section 203(m) because Plaintiff knew he was a tipped employee, explained the tip process in his deposition (i.e., received an hourly rate

26

below minimum wage and then tips), and he received a copy of the employee handbook that included a tip credit section.

While employers frequently provide written notice, the Eleventh Circuit has agreed that oral notice that an individual would be paid $2.13 plus tips, combined with a prominent display of an FLSA poster explaining the tip credit is enough.  *Pellon*, 291 Fed. Appx. 310, *affirming* 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007).  The *Pellon* court reasoned that a prominently-displayed poster using language approved by the Department of Labor was sufficient notice "[b]ecause it would defy logic to require the display of inadequate information regarding the minimum wage and employer tip credit.  *Pellon*, 528 F. Supp. 2d at 1310.[5]

Although significant discovery has occurred, Plaintiff has not provided a reasonable basis to claim that she and other tipped employees are similarly situated

---

[5] Plaintiff briefly argues on page 24 of her motion that -- other than the Notice to Employees Who Receive Tips notice -- the methods that Apple Creek and NRP used to inform their tipped employees of the tip credit were inadequate, citing to the Department of Labor's updated regulations issued April 5, 2011.  That regulation, however, is merely an interpretive regulation and thus does not change the law in this Circuit.  To properly "notify" an employee, an employer "must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations."  *Pellon*, 528 F. Supp. 2d at 1310, *aff'd* 291 Fed. App'x 310 (citing *Kilgore*, 160 F.3d at 298).  "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it.'"  *Id.* (*quoting Chan v. Triple 8 Palace, Inc.,* No. 03-cv-6048, 2006 U.S. Dist. LEXIS 15780, *67 (S.D.N.Y. Mar. 30, 2006)).  "To 'inform' an employee requires less effort than it would to 'explain' the tip credit to the employees."  *Id.* (*quoting Kilgore*, 160 F.3d at 298).

because NRP has widespread policy or practice of failing to provide tipped employees with notice of the tip credit provisions found in Subsection 203(m).

First, Plaintiff acknowledges that Defendants produced a "Notice to Employees Who Receive Tips," which informs tipped employees of all of the requirements of Subsection 203(m).  In an effort to cast doubt on whether tipped employees received adequate notice, Plaintiff argues that there is no evidence that this Notice was used because the document was not in her personnel file or the four opt-in plaintiffs' personnel files produced, and because she and the current opt-ins "claim to have never seen" the Notice.  (Pl. Br., pp. 23-24).  Contrary to Plaintiff's claims, including her unsupported statement that Plaintiff and the opt-ins have never seen the Notice, NRP has provided sworn statements from 10 different employees, from six different NRP restaurants in Georgia, providing evidence that the Notice was used to inform tipped employees of their rights under the law as early as August 2011.  (*See* Bell Decl. ¶ 6; Brown Decl. ¶ 4; Bryson Decl. ¶ 3; Carden Decl. ¶ 5, Cunningham Decl. ¶ 8; Franklin Decl. ¶ 6; Parks Decl. ¶ 5; Phillips Decl. ¶ 4; Webb Decl. ¶ 4; Workman Decl. ¶ 4)  Moreover, NRP recently provided its counsel with a sampling of several hundred Notices signed by tipped employees at various restaurants, many of which were signed

in 2011.  (Buck Decl. ¶ 5.)[6]  Needless to say, the undisputed evidence shows that

tipped employees have received this Notice since the summer of 2011.

Second, even if Plaintiff did not receive the "Notice to Employees Who Receive

Tips," she and Opt-in McLaughlin testified to receiving notice in many other ways,

such as orally when they were hired, via handbooks that discuss the tip credit, and via

Department of Labor- and Apple Creek-generated posters that discuss the tip credit.

*See generally* Section I.B, *supra*.  These methods of notice go beyond the requirements

found sufficient in *Hardwick*, *Kilgore*, and what the Eleventh Circuit found sufficient

in *Pellon*.  When Plaintiff and Opt-in McLaughlin were asked what more could have

been done to informed tipped employees of the tip credit, all they could say is that it

could have been "a spoken thing, something that is said to every employee" (Ide Dep.

at 92:8-19), and "it should have been explained in person more clearly."  (McLaughlin

Dep. at 112:6-10).  Although Plaintiff may feel notice could have been provided

differently or more clearly, Plaintiff's feelings alone are insufficient to support her

claim that NRP had a policy or practice of failing to provide tipped employees with

adequate notice of the tip credit, especially in the face of the evidence produced by

NRP to the contrary.

---

[6] NRP's counsel will produce these Notices to Plaintiff.  NRP also can provide copies
to the Court at its request.

### D.   Plaintiff's Proposed Collective Action Is Unmanageable

Moreover, "[t]his is not an appropriate case for a collective action because it is utterly unmanageable." *Williams v. Accredited Home Lenders, Inc.,* No. 1:05-cv-1681-TWT, 2006 U.S. Dist. LEXIS 50653, at *14 (N.D. Ga. July 25, 2006).  Cases are unmanageable as collective actions where they involve fact-intensive inquiries and individualized defenses that would require hundreds of mini-trials.  *See Beecher,* 904 F. Supp.2d at 1299 (denying conditional certification because the "case could result in . . . mini-trials of more than 2 million corrections made to time and tip records of the putative class"); *see Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 775 (7th Cir. 2013) (affirming decertification of collective action where "2341 separate hearings loomed even if the district judge bifurcated the proceedings -- that is, scheduled separate, successive trials on liability and damages").

*Pellon,* 528 F. Supp. 2d at 1313-14, is instructive.  There, the court concluded that determining how much time the plaintiffs spent on "non-tipped duties is infeasible. . . Permitting Plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers."

30

Just so here.  There is simply no manageable way to adjudicate Plaintiff's unrelated duties and notice claims on a class basis.  Plaintiff failed to introduce *any* model or methodology establishing that liability or damages are capable of measurement on a collective basis.  Under Plaintiff's dual jobs claim, the Court will need to evaluate the nature of the duties performed by each plaintiff, when those duties were performed, and for how long.[7]  As discussed, the evidence shows that tasks allegedly performed by Plaintiff, such as "scrubbing toilets," were not performed by other tipped employees.  Thus, the Court will need to conduct thousands of individual inquiries, analyzing each shift worked by each plaintiff.  Similarly, the Court will need to evaluable how NRP informed each plaintiff of the tip credit on an individual-by-individual basis.  Because this case would not be manageable as a collective action, Plaintiff's motion should be denied.

### E.  Plaintiff Has Not Established That Others Are Interested In Participating In This Lawsuit.

Finally, Plaintiff must show sufficient interest among putative class members in joining the lawsuit to obtain conditional certification.  Plaintiff argues that she has met this requirement because four people have joined this action.  But Plaintiff is wrong

---

[7] That is, simply because a tipped employee allegedly performed "unrelated" duties during part of a shift does not mean that NRP cannot take the tip credit for the remainder of the shift.  *See Driver v. AppleIllinois, LLC*, No. 06-cv-6149, 2013 U.S. Dist. LEXIS 154773, *12-16 (N.D. Ill. Oct. 29, 2013).

because out of a putative class of more than 4,875 people, she has found only four individuals interested in joining this suit since it was filed more than eleven months ago, representing approximately 0.1% of the putative class.  And these individuals worked at only two of NRP's 40 restaurants during the relevant period.

Such a poor showing here fails to prove that interest in this action exists—in fact it demonstrates the opposite.  *See Beecher*, 904 F. Supp. 1299-1300 (finding limited number of opt-ins insufficient in light of failure to show an existing nationwide policy or practice).  Given the limited interest that has been shown by anyone outside of a single one of NRP's 40 restaurants, the lack of a common unlawful policy, the large size of the potential class, and the lack of cohesion among the claims, this case could easily become unmanageable.

### F.   The Court Should Not Approve Plaintiff's Request For The Content And Distribution Of Notice

Plaintiff has not satisfied her burden to demonstrate that the Court should facilitate the issuance of notice to potential opt-in class members.  But if this Court grants Plaintiff's request, NRP requests that it: (1) reject Plaintiff's request for names and addresses for individuals who worked for NRP and/or Apple Creek beyond the relevant time period, (2) modify the notice as discussed below, (3) deny Plaintiff's request that notices be posted on employee bulletin boards at NRP's Georgia

restaurants, and (4) deny Plaintiff's request to distribute notice via pay envelopes to

current employees.

      While the deficiencies of Plaintiff's proposed notice may never become ripe for

discussion, NRP submits the following summary of its position on Plaintiff's proposed

notice, and requests related thereto:

1.    Plaintiff seeks to represent putative class members who were employed by
Apple Creek and/or NRP between February 15, 2010 and February 4, 2013.  But
proceedings for unpaid wages under the FLSA must commence within two years
after the cause of action accrues, unless a claim results from a willful violation
of the FLSA, in which case the limitations period is three years.  See 29 U.S.C.
§ 255(a).  To join an FLSA collective action, an employee must consent, or "opt
in," to the action by filing a written consent to join, 29 U.S.C. § 216(b), and opt-
in plaintiffs are "deemed to commence their civil action only when they file
their written consents to opt-into the class action."  *Grayson v. K Mart Corp.*, 79
F.3d 1086, 1106 (11th Cir. 1996).  The statute of limitations is not deemed to be
tolled until an individual opts into an FLSA collective action, not when Plaintiff
filed the Complaint, which is what Plaintiff seeks now.  *See id.* at 1108.  For this
reason, an individual who consents to join the case in response to this notice
could obtain relief no more than three years before the date he or she files the
consent.  Thus, it would be unnecessary for notice to be issued to anyone whose
employment ended more than three years before the date a collective action
notice issues.

2.    Plaintiff requests that the notice be sent via first class U.S. Mail, posted on
employee bulletin boards at NRP's Georgia restaurants, and distributed in pay
envelopes to current employees meeting the approved class criteria.  The latter
two methods are unnecessary.  First-class mail is sufficient to provide putative
class members with notice, especially here.  *See In Re: Wells Fargo Wage and
Hour Employment Prac. Litig.*, No. H-11-2266, 2013 U.S. Dist. LEXIS 70040,
at *6-7  (S.D. Tex. May 17, 2013) (denying request to post notices in Wells
Fargo offices); *see also Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 631 (D. Colo.
2002) (rejecting use of a website posting and email distribution, explaining
"[f]irst class mail ensures, at the outset, that the appropriately targeted audience

receives the intended notification and maximizes the integrity of the notice process."). Further, posting notice in NRP's restaurants is likely to cause confusion because Plaintiff does not seek to include individuals in her proposed class who began working for NRP after February 4, 2013 -- more than one year ago. Third, including notices in pay envelopes of current employees is burdensome to NRP and, like posting on bulletin boards, is redundant because addresses for current employees are more likely to be accurate and it is more likely that current employees will receive the notice via first class U.S. Mail. *See Wells Fargo*, 2013 U.S. Dist. LEXIS 70040, at *6 (postings on intranet or in offices would not facilitate notice because it "would only provide notice to current employees for whom the home addresses should be valid").

3. The language in section 1 could confuse potential opt-in class members. Specifically, the last sentence of section 1 states, "This Notice explains how your rights may be affected by this lawsuit, and explains the procedure for joining the lawsuit to recover owed minimum wages. This portion of the sentence should be revised to read, "and explains the procedure for joining this lawsuit, *in which you may potentially* recover owed minimum wages."

4. Section 2 of Plaintiff's proposed notice is inaccurate and should start with the statement "The *former* employee who started this lawsuit" because Plaintiff has not worked for Apple Creek for more than two years and she has not worked for NRP for nearly one year. Section 2 also could confuse potential class members because it states "the time period that is applicable to Plaintiff's claim is February 15, 2010 through February 4, 2013." Such a date could confuse an individual into believing that their potential claims are covered by the same time period, which as discussed in more detail in point 1 above, is inaccurate. Also, Section 2 states "[t]his lawsuit is currently in the early pretrial stage," but this case has been pending for nearly a year, the parties have conducted written and oral discovery, and the scheduled close of discovery is February 10, 2014. For this reason, this statement in Section 2 should either be removed or revised to state, "This case has been pending since February 15, 2013, and while in the pretrial stage, discovery has been completed on Plaintiff's individual claims."

5. Section 4 is titled, "How do I join this case to recover my owed overtime pay?" This is a loaded question that implies that if one joins the case, they will recover money. Further, this case isn't about overtime pay. It is a claim for minimum

wages  For these reasons, the title of this section should be revised to read, "How do I join this case?"

6.  Section 5 is titled "How will the lawsuit affect me," but makes no mention of the potential obligations opt-in class members me have if they elect to join this case. Specifically, they may be required to answer written discovery, sit for a deposition, give testimony in Court, and potentially pay costs incurred by NRP and Apple Creek in the defense of this matter.  *See Koenig v. Bourdeau Contr. LLC*, No. 4:13-cv-00477, 2013 U.S. Dist. LEXIS 156217, at*11-13 (E.D. Mo. Oct. 31, 2013) (holding that language providing such notice should be included to provide accurate notice to potential opt-in class members).  Such full disclosure is necessary to ensure that individuals make an informed decision as to whether to join the case, and helps minimize the potential for the inclusion of dozens of plaintiffs in the case who prove unwilling to comply with court-authorized discovery.  For this reason, Section 5 should include, at a minimum, the following statement: "By joining this action, you may be required to provide information or documents, appear in person or otherwise actively participate in this action by testifying in a deposition and/or at trial.  Your Counsel will assist you in these activities."

7.  The Notice of Consent should be revised to only refer to the named defendants and to provide an accurate time period for potential opt-in class members' claims, which is discussed in point 1 above.  The Notice of Consent should also be modified to ensure that individuals understand that they must have worked in a tipped position during the potentially relevant time period.  To that end, the Notice of Consent should begin with the following sentence:  "By my signature below I represent to the Court that I have been employed by Neighborhood Restaurant Partners, LLC and/or Apple Creek Management Company, Inc., during the time period between [three years prior to issuance of notice] and February 4, 2013, and have not been paid all of the minimum wages owed to me pursuant to 29 U.S.C. § 201, *et seq*. for work performed in a tipped position during that time period."

## CONCLUSION

Based on the foregoing, the Court should deny Plaintiff's motion.

16788755v.11

Dated: February 10, 2014

Respectfully submitted,

NEIGHBORHOOD RESTAURANT
PARTNERS, LLC

By /s/Jeremy W. Stewart
Noah A. Finkel*
Arthur J. Rooney*
Jeremy W. Stewart*
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
(312) 460-5000
nfinkel@seyfarth.com
ajrooney@seyfarth.com
jwstewart@seyfarth.com
*Admitted *pro hac vice*

Louisa J. Johnson
Ga. Bar No. 391805
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309-3962
(404) 888-1023
lojohnson@seyfarth.com

## Certificate Of Compliance With LR 5.1

Pursuant to this Court's Local Rule 7.1D, counsel for Defendant certifies that this brief has been prepared with one of the font and point selections approved by this Court in Local Rule 5.1B.

Dated:  February 10, 2014

By /s/Jeremy W. Stewart

36

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2014, a copy of the *Defendant*

*Neighborhood Restaurant Partners, LLC's Response in Opposition to Plaintiff's*

*Motion for an Order to Authorize Notice to Similarly-Situated Persons Pursuant to 29*

*U.S.C. § 216(b)* was filed electronically.  Notice of this filing will be sent to all counsel

of record by operation of the Court's electronic filing system.  Parties may access the

filing through the Court's system.

By /s/Jeremy W. Stewart
One of the attorneys for Defendant
Neighborhood Restaurant Partners, LLC

37