IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANDREA IDE, on behalf of herself and all other persons similarly situated, known and unknown, | |
| | CIVIL ACTION FILE NO.: |
| Plaintiff, | 1:13-cv-00509-SCJ |
| vs. | |
| NEIGHBORHOOD RESTAURANT PARTNERS, LLC and APPLE CREEK MANAGEMENT COMPANY, INC., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF APPLE CREEK MANAGEMENT COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT

**I.** **Introduction**

Andrea Ide ("Ide") brings this action claiming improper use of the tip credit under 29 U.S.C. 203(m) by Apple Creek Management Company, Inc. ("Apple Creek") alleging she performed dual jobs while being paid a tip credit rate. Ide further claims she was not informed of the tip credit provisions. This case falls within the auspices of *Pellon v. Bus. Representation Int'l, Inc*., 528 F. Supp. 2d 1306, 1313 (S.D. Fla. 2007) aff'd, 291 F. App'x 310 (11th Cir. 2008). The material undisputed facts in this case reveal that Ide has no cognizable claim. Ide's claims

are identical to those in *Roberts v. Apple Sauce, Inc*., 945 F. Supp. 2d 995 (N.D. Ind. 2013) where that court dismissed the dual jobs claims. *Pellon* is dispositive of both Ide's claims of dual jobs and failure to be informed of the tip credit provisions.

## II.     Statement of Facts

Apple Creek operated forty Applebee's restaurants in the north Georgia area until October 12, 2011 [Doc. 43 p.4] when it sold its operation to Neighborhood Restaurant Partners, LLC ("Neighborhood Restaurant").  Ide was employed at the Lawrenceville location from May, 2002 until Apple Creek sold the restaurants. (Appendix Exhibit D, Deposition of Andrea Ide ("Ide Dep.") Dep. pp. 21, 30)[1] Apple Creek utilized Front of the House employees and Back of the House employees. Front of the House employees were paid on a tip credit wage for front of the house duties. (Appendix Exhibit C, Declaration of John Neri ("Neri Dec.") ¶ 5; Appendix H, Declaration of Jeff Morris ("Morris Dec.") ¶ 5) Back of the House employees engaged in duties that did not involve customer service and were paid at or above minimum wage depending on their job function and experience. (Neri Dec. ¶ 8; Morris Dec. ¶ 8) Ide worked in various positions, including positions that

---

[1] Ide continued her employment with Neighborhood Restaurant Partners LLC until February of 2013. *Id.*

were paid under a tip credit under 29 U.S.C. § 203(m).[2] There is no allegation that Ide received less than minimum wage after receipt of her tips. (Ide Dep. p. 52) From February 1, 2010 until October 12, 2011, Ide worked 266 shifts during the 402 days she worked for Apple Creek in positions that were paid at minimum wage or higher and average six and one-half hours per day for all days worked. (Appendix Exhibit A, Declaration of Jerry Killinger ("Killinger Dec.) ¶ 20, 21)

Ide complains that Apple Creek used the tip credit wage while she performed non-tipped duties. [Doc. 22 ¶ 16] These duties are cleaning duties [Doc 51 p. 12], food preparation [Doc 51 p. 17], expediting their own food while no expo person was available [Doc. 51 p. 17], taking to-go orders [Doc. 51 p. 18] and duties while the restaurant was not open. [Doc. 51 p. 19] As shown below, these duties are intertwined within the scope of the tip credit positions; and Ide's primary complaint is working opening shifts, closing shifts along with bartender duties.  Ide references a list of duties (commonly referred to as side work charts) for four stations including Expo, Coffee/Tea, Dressings and Waitbays as non-tipped duties

---

2 Ide was employed as Bartender where she earned $3.00 to $5.00 per hour plus tips (Ide Dep. pp. 23-24); Server where she earned $2.13 to $3.13 an hour plus tips (Ide Dep. pp. 23, 31); Host where she earned $4.00 per hour plus tips (Ide Dep. p. 24); Expediter where she earned $8.75 to $9.50 per hour (Ide Dep. pp. 25, 33-34); and The To Go position where she earned $7.25 an hour plus tips. (Ide Dep. p. 25)

she performed. [Doc. 21-1 pp. 2 & 3][3] Side work in the industry refers to having stations ready and maintained for efficient customer service.  These stations are staging areas that were needed to run a food service. (Appendix Exhibit B, Declaration of Stanley Klaus ("Klaus Dec.") ¶ 7; Ide Dep. pp. 94-96) Maintaining stations ready and available provides for efficient service and helps comply with health codes as well as proper presentation to the customer for orders made by a customer. (Klaus Dec. ¶ 8)

The duties performed by Apple Creek customer service employees were within the scope of the customary tipped occupation. (Klaus Dec. ¶ 6) Working opening shifts falls within the tip credit position and involved six to seven servers that setup the stations. (Ide Dep. pp. 94, 98; Klaus  Dec. ¶ 9; Neri Dec. ¶ 21; Morris Dec. ¶ 21) This involved setting up the four stations for servers including the wait bay, dressings, coffee/tea and expo. These were areas where the servers would retrieve items needed during service of guests and were directly related to what was need for their customer service. The servers would also make sure their assigned table sections were ready for guests. (Ide Dep. pp. 94-96; Neri Dec.¶ 22; Morris Dec. ¶ 22) The servers were scheduled one hour prior to opening and usually arrived within 45 minutes. The morning set up took less than 30 minutes.

---

[3] Ide's lists have dates of 2010 and 2012 attached to her complaint. The 2012 list would not be applicable to Apple Creek as it ceased operations after October 12, 2011.

(Declaration of Diana Franklin ("Franklin Dec.") ¶ 16 [Doc. 56-18]; Neri Dec. ¶ 21' Morris Dec. ¶ 21)[4] The morning servers were generally scheduled for six to eight hours and the opening servers worked shifts up to eight hours.  (Neri Dec. ¶ 21). Further, Ide has indicated she does not claim all of this work is outside the scope of a tip credit position. (Ide Dep. p. 94) Apple Creek's policy was that it should take no more than 30 minutes before the restaurant opens or closes to complete any side work needed for the day. Further the policy was no more than 20% of their duties should be spent performing such duties during the day. Servers generally did not work both opening and closing shifts. Duties performed by servers, including those before or after the restaurant's posted hours, were intertwined with guest services during customer service. (Klaus Dec. ¶ 10, Ex. 1)

Having the restaurant ready in the morning required setting up the stations the servers needed to serve guests which did not involve food preparation. (Dec Neri Dec. ¶ 22; Morris Dec. ¶ 22) As part of the station set up in the mornings, Servers stocked items at the stations and made the stations ready for customer service. Servers would cut lemons needed for the day which only took a few

---

[4] Opening Servers were typically scheduled to arrive one hour before opening; however, the side work did not take this long to complete. This allowed for leeway for arrival to the restaurant for servers. Generally closing servers completed worked within 30 minutes of the last customer waited on, which could be after posted closing hours due to customers remaining in the restaurant. (Klaus Dec. ¶ 10)

minutes. (Franklin Dec,¶ 8) Servers would take dressing out of a bag and put into a container for customer service. (Appendix Exhibit C, Deposition of Kaitlyn McLaughlin ("McLaughlin Dep.") pp. 126-127) They would receive tomatoes cut from the kitchen and would receive the bacon needed for the day from the kitchen. Although not typical, if a server prepared the bacon, it took a couple of minutes. Bacon was pre-packaged and pre-cooked. It was a simple matter of placing it into a microwave. (Neri Dec. ¶ 26; Morris Dec. ¶ 26; Franklin Dec. ¶¶ 8-9; McLaughlin Dep. p. 128)

Ide complains tip credit employees had to use and fill sani-buckets. Sani-buckets were kept at some stations. This liquid is contained in dispenser that is filled by a third party vendor. The sani-bucket is filled by pressing a button to dispense into the bucket which takes a few seconds. These are required for towels that are used to wipe down tables as for health and service reasons, dry towels are not allowed. (Neri Dec. ¶ 24; Morris Dec. ¶ 24; Franklin Dec. ¶ 13) Silverware was washed by the General Utility ("GU") employee and other Back of the House employees along with the dishwashing. Servers and Hosts rolled silverware in advance for customer service. Silverware is required to be in a rolled napkin under Health Department Regulations and as part of presentation to the customer. This is

done in advance and throughout the day so that silverware is ready as efficient service to a customer. (Neri Dec. ¶ 25; Morris Dec. ¶ 25; Franklin Dec.¶¶ 10, 16)

Hosts were scheduled to come in 30 minutes early. They would make sure the host stand was stocked with silverware, menus and kid menus. (Neri Dec. ¶ 31; Morris Dec. ¶ 30) During the shift Hosts would greet and seat guests. They would provide menus and silverware to guests. Hosts would keep the front door window clean by use of a bottle kept at the host stand. This bottle was filled by a dispenser with the restaurant cleaning fluid and took a few seconds to refill. During the day Hosts would do a bathroom check to make sure there were paper towels, soap and toilet paper. Cleaning issues for the bathroom were to be reported to the GU or manager. (Hosts would occasionally wipe down the mirror). Hosts did not work past restaurant closing times and had no closing duties. (Neri Dec. ¶ 32; Morris Dec. ¶ 31)

A.M. Bartenders were scheduled to arrive one hour early and generally arrived within 45 minutes of the restaurant for a seven eight hour shift. Bartenders would stock the beer, cut fruit, make mixes and get the ice that would be needed for the shift. (Neri Dec. ¶ 33; Morris Dec. ¶ 32) Bartenders kept the bar area cleaned and kept the bar glasses clean which took a few seconds. Closing

bartenders cleaned the bar area which took less than 30 minutes. (Neri Dec. ¶ 34; Morris Dec. ¶ 33)

Server closing duties are a separate shift from opening duties (Neri Dec. ¶ 28; Morris Dec. ¶ 28) and include matters such as a ten point table check of their tables and break down stations which lasted no more than fifteen minutes to one hour. (Ide Dep. pp. 99-100, 102) The 10 point table check included using a Bissell around the table to make the area ready for the next guest. (Neri Dec. ¶ 35) Servers that worked the closing shifts cleaned their assigned stations used by Servers during the day, restock and put up or discarded perishables.  Lawrenceville did not have much detail cleaning done at the stations or tables. At most, a small amount of work was done in these areas once a week and it would take five to ten minutes, but did not result in closers engaged in more than thirty minutes at the end of their shift. (Neri Dec. ¶ 28; Morris Dec. ¶ 28; Ide Dep. pp. 99-100, 102; Franklin Dec. ¶ 16)

The Expo position was considered a Back of the House position and was paid at or above minimum wage. This employee expedited food for the entire restaurant and had no customer interaction during peak periods. If it was during peak hours without an employee working Expo, then a manager would step in to handle the line. During slow periods, Servers took their own food for their

customers out of expo, but this was a matter of taking the dish off the top shelf from the kitchen and putting it onto the counter so that they could add garnish or dressing for their customer, put it onto a tray and take the order to the table. (Neri Dec. ¶ 14; Appendix Exhibit F, Deposition of Art Everson ("Everson Dep.") pp. 106-107; Appendix Exhibit G, Deposition of Stanley Klaus ("Klaus Dep.")  p. 157; Morris Dec. ¶ 14; Declaration of Melanie Webb ¶ 11 [Doc. 56-22]) [5]

Ide's allegations involve opening and closing duties, along with the duties of a bartender. These all fall within a tip credit occupation as shown below. The detailed records concerning the hours and job codes Ide performed are very significant.   The labor/tips report for Ide for the period of February 1, 2010-October 12, 2011 is attached to the Declaration of Jerry Killinger as Exhibit 1. Killinger has provided details for the job codes Ide was clocked in under, which is

---

[5] Apple Creek also had an employee that was a GU and paid above minimum wage. The GU was a Back of the House position that involved the cleaning, dishwashing, bathrooms, parking lot and heavy cleaning. Other kitchen staff also participated in these duties that are referred to a Back of the House. (Neri Dec. ¶ 15; Franklin Dec. ¶ 10) The GU employee at the Lawrenceville location handled the bathroom cleaning and dishwashing along with other GU duties. (Neri Dec. ¶ 17; Morris Dec. ¶ 17; Franklin Dec. ¶¶ 7 & 10) This took less than 10 minutes. Trash was taken out by the GU and Servers on occasion would remove the trash from the wait bay to the back for the GU. Dishes were cleaned by the GU as well although a server may have pushed an occasional rack which only took a few seconds. (Neri ¶ 36; Morris Dec. ¶ 35; Ide Dep. p. 129; Franklin Dec. ¶¶ 7 &10) Back of the House employees engaged in duties that did not involve customer service and were paid at or above minimum wage depending on their job function and experience. (Neri Dec. ¶ 8)

a matter of review of the labor/tips report. Ide never had a shift that included more than 20% of her time beyond the restaurant posted opening hours during the 419 days she worked for Apple Creek except for a minimal amount of 11 days that involved two to nine minutes. (Killinger Dec. ¶ 34). None of her closing shifts involved working more than 20% after the closing hours. (Killinger Dec. ¶ 32).

Apple Creek's policy of not using tip credit wage individuals to perform general cleaning, kitchen or GU type of duties or substantial cleaning duties was enforced at Lawrenceville.[6] (Neri Dec. ¶ 16; Morris Dec. ¶ 16; Franklin  Dec. ¶¶ 7, 10, 11, 12, 15) On July 18, 2011 an email to the restaurant management staff reminding them of Apple Creek's policy against of use of tip credit employees for substantial cleaning. This was also discussed previously on a continuing basis at manager meetings. (Part of the reason of this email was a reminder of proper procedures of clocking in, but also addressed an issue we had at the time of employees being at the restaurant during no working hours). (Klaus Dec.¶ 11, Ex. 2)

Ide alleges that she scrubbed toilets as a closing server, but this practice stopped at the end of 2010. (Ide Dep., pp. 139, 145; McLaughlin Dep. pp. 49-50) Although this alleged practice was unknown to management or even some servers

---

[6] Closing servers vacuumed the front until 2010, but this took less than 10 minutes (Neri Dec. ¶ 35) This stopped in April of 2010. (Morris Dec. ¶ 34) This is not a violation of tip credit duties under clear guidance of the Department of Labor.

at the Lawrenceville location (Neri Dec. ¶ 18; Morris Dec. ¶ 18; Franklin Dec. ¶ 7), Ide worked 17 closing shifts in 2010 for Apple Creek. (Killinger Dec. ¶ 31) These shifts were in excess of eight hours and nine of these shifts she clocked out within thirty-five minutes of the posted closing time. (Killinger ¶ 31, 32) None of these 17 closing shifts, including the additional eight, involved being at the restaurant for more than 20% of her time after closing. (Killinger ¶ 32).

Managers were trained to advise to all tip credit employees verbally along with the use of the handbook (Klaus Dec. ¶ 22, Ex. 3),[7] have a poster from the Department of Labor located at the restaurant (Klaus Dec. ¶ 22, Ex. 4), have a separate poster from Apple Creek concerning the tip credit wage at the restaurant (Klaus ¶ 22 Ex. 5) and a have tip pool agreement signed by the employees. (Klaus ¶ Ex. 6) The tip pool agreement was added to the employee file jacket within the last seven years so that it would remain with the file. (Neri  Dec. ¶ 12; Morris Dec. ¶ 12) In August 2011, Apple Creek put this tip credit information into one form to distribute to all employees.  This was in addition to the information already contained in the handbook. (Klaus Dec. ¶ 23, Ex. 7; Neri Dec.¶ 13; Morris Dec. ¶ 11) Ide admits she received proper tip credit notice. Her complaint is she wanted to

---

[7] Being informed of the tip credit was part of training as employees had to know how to use the restaurant's POS system, declare tips and understand performance issues that could be indicated by the lack of declared tips. (Klaus Dec. ¶¶ 16, 17, 18, 19, 21, 24, 25; Neri Dec. ¶¶ 7, 10, 11)

be better informed, which is not required under the law. (Ide Dep. p. 54. 92-93) Further, she saw handbooks and posters, but did not pay much attention to them. (Ide Dep., pp. 56, 58, 59, 60, 90-91) Apple Creek and Neighborhood Restaurant had a number of posters that not only complied with the DOL standards, but also went further by explaining the tip credit pay during orientation. (Klaus Dep. pp. 53-62) These evolved and Apple Creek went further by adopting a signed written notice which was not even required under the law in later periods. (Klaus Dep. p. 61)[8]

## II.    **Argument and Citation of Authority**

### A.    *Standard on Motion for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). The party seeking summary judgment bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of [the record] 'together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

[8] That Ide's signed notice has not been produced does not create a material fact. This was not required under the law and is a new process put into place by Apple Creek nine years after Ide's hiring.

Once that burden has been met, the burden shifts to the "non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991) Whether facts are material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative."   *Id.* at 249-50, 106 S.Ct. 2505.

**B.     *Side Work Job Duties***

Ide's complaint is that time she performed side work was improperly paid under tip credit wage. Such is not the standard in this Circuit and Ide's claims legally fail. Ide's position that the Defendants were somehow supposed to have her clock in and clock out every minute that she was not taking an order or directly providing food is not supported in this Circuit. This Court needs look no further than *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1313 (S.D. Fla. 2007) aff'd, 291 F. App'x 310 (11th Cir. 2008) and the court's discussion concerning such FLSA allegations in *Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995, 1001 (N.D. Ind. 2013). *Pellon* was a motion for summary judgment. The job duties of a tip credit position are discussed in *Pellon* and apply here as the court addressed the duties of sky cap employees as similar to those working in the

restaurant industry. While *Roberts* was a motion to dismiss, the legal deficiencies of the plaintiff's allegations of FLSA violations are thoroughly discussed as the *Roberts* claims are quite strikingly identical.

The duties complained of by Ide all fall within the scope of tip credit positions she worked. "Servers, bartenders, and hosts—who directly related with customers—are not also employed in the second occupation of a dishwasher, cook, or janitor simply because an unspecified amount of time during their shift is spent performing the duties cited in the Amended Complaint: 'dishwashing, food preparation, kitchen and bathroom cleaning, [and] trash removal.'" *Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995, 1001 (N.D. Ind. 2013) Courts in this Circuit have found these types of duties such as cleaning the bar area, keeping the station clean, equipping the silverware trays, filling empty ice buckets, folding napkins, whether in closing side work or opening side work are incidental to producing tips and do not place that person in a dual occupation. *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009). The court in *Ash* dealt with a motion for summary judgment and found similar side work to be within the tip credit occupation. (Summary judgment was denied because a tip pool violation was in factual dispute which would have invalidated use of the tip credit

entirely. Tip pool issues are not in dispute here).[9] Any temporal scope of duties is addressed below as both *Ash* and *Roberts* found these duties to fall within the scope of a tip credit occupation. Ide's complaint is not based on a temporal limitation, but an allegation that these duties fall outside the tip credit occupation. **Most importantly Ide has not alleged in this case that there is an FLSA violation of excessive use of preparation of maintenance and as addressed below the facts would not support any such allegation.**

The court in *Pellon* refused to allow the plaintiffs to scrutinize every minute of the day to determine what qualified as a tipped activity and what does not. *Pellon,* 528 F. Supp. 2d at 1314. Ide attempts to take bits and pieces of her day to allege that there are FLSA violations and that she worked a job outside her tipped activity. The *Pellon* court reviewed sky cap duties similar to restaurant employees. *Pellon,* 528 F. Supp. 2d at 1313. As the court noted in *Pellon*, even bus boys and hosts who have limited activity with customers qualify as persons entitled to be paid under tip credit. *Pellon,* 528 F. Supp. 2d at 1315.

---

[9] Addressed below is the temporal issue of spending more than 20% on preparation and maintenance, although this has not been raised by Ide nor included in her complaint. The *Ash* court reviewed and applied the issue of 20%. Neither party had raised this; however, the court found that the total time of a plaintiff's shift did not create violate the FLSA by reviewing her pre-opening and post-closing time.

The undisputed facts show Ide spent little, if any, time in duties like food preparation and dishwashing. In Ide's Motion for Order to Authorize Notice [Doc. 51], she argues these duties are of a separate and distinct non-tipped occupation that must be compensated at the minimum wage rate at all times by citing to *Myers v. The Copper Cellar Corp.,* 192 F.3d 546, 551 (6th Cir.1999), *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 301 (6th Cir.1998), and *Fast v. Applebee's International, Inc.,* 638 F.3d 872, 877 (8th Cir.2011).[10] "None of these cases, alone or in combination, support Ide's conclusion." *Roberts,* 945 F. Supp. 2d at 1001. In *Myers* the court found that salad preparers could not be included in tip pools because they had abstained from direct intercourse with customers. This is completely different from finding that some food preparation disqualifies a server as a tipped employee for any of that portion of their time.[11]

In *Kilgore* the issue is whether or not hosts were properly included in a tip pool, the Court noting that hosts could be distinguished from dishwashers, cooks and off-hour employees like an overnight janitor and therefore could be properly included. As the court observed in *Roberts,* 945 F. Supp. 2d at 1001, it is

---

[10] Ide's reliance on *Fast* is misplaced as the court dealt with the amount of deference to be applied to the Department of Labor's Field Operations Handbook which is dealt with below.

[11] Ide's complaints discuss making bacon for the entire day which takes all of two minutes and some dressings retrieval. As also noted, this is part of preparation, a very minor activity for the direct service of guests.

inaccurate to find that *Kilgore*'s holdings would demand duties like washing dishes, prepping food and cleaning being performed by tip credit employees must be compensated at minimum wage at all times. As the court noted in *Roberts* servers, bartenders and hosts who directly related to customers are not also employed in a second occupation because an unspecified amount of time is spent performing duties such as dish washing, food prep, kitchen and bathroom cleaning and trash removal. There is no proposition that food preparation and general cleaning around the dining room cannot be incidental to the duties of a server and must be compensated at minimum wage. *Roberts,* 945 F. Supp. 2d at 1002.

Even regulatory guidance from the DOL confirms that opening and closing tasks performed by servers and those after closing qualify for tip credit wage as long as they were not assigned to just one individual. *See* U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter WH–502, 1980 WL 141336 (March 28, 1980).This even applies to such things as vacuuming the floors. The undisputed facts are that Apple Creek complied with relevant case law and DOL guidance as such task were not assigned routinely to a single individual. Ide states in her deposition that on the opening position there were usually six to seven (Ide Dep. pp. 94, 98)**.** *Roberts,* 945 F. Supp. 2d at 1002.

Apple Creek's use of bartenders to care for the bar is further supported by DOL Opinion Dep't of Labor, Wage & Hour Div., Op. Letter FLSA2009-12, 2009 WL 649014  (Jan.15, 2009)  in addressing bar-backs.  The DOL reviewed the bar-back position as not being one to directly serve guests, but performs a substantial amount of work behind the bar keeping glasses clean, keeping the bar clean, taking out trash from behind the bar and cleaning the area around the bar and DOL Opinion determined that this was a tip credit position. This is identical to Ide's claims when it relates to her bar duties although she attempts to devise this somehow into a cleaning position. (Ide Dep. pp. 105-106) Courts in this Circuit have found these types of duties such as cleaning the bar area, keeping the station clean, equipping the silverware trays, filling empty ice buckets, folding napkins, whether in closing side work or opening side work are incidental to producing tips and do not place that person in a dual occupation. *Ash v. Sambodromo, LLC*, *supra*.

C.    *Temporal Limitations*

Ide has not alleged that any of her time was subject to a temporal limitation and only alleges that the duties she performed were outside the scope of her tip credit occupation (which as noted above is not supported by law). The court in *Pellon* rejected such division of non-tipped duties during the work day as infeasible. *Pellon,* 528 F. Supp. 2d at 1314. Although it would be unfair to the

defendants after the close of discovery to allow Ide to change her allegations, the undisputed facts in this case are similar to that in *Ash* and reveal there would be no cognizable claim by Ide.  This has been referred to as a dual jobs claim and the regulation on this matter is as follows:

> (e) Dual jobs.   In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R § 531.56(e)

The Department of Labor's handbook on guidance concerning use of tip credit states that where a tipped employee spends a substantial amount of time (in excess of 20%) in preparation or maintenance no tip credit could be used for such time. Dep't of Labor, Wage & Hour Div., Field Operations Handbook, § 30d02; FOH ¶ 30d00(e) (1988) available at ([www.dol.gov/whd/FOH/FOH_Ch30.pdf](www.dol.gov/whd/FOH/FOH_Ch30.pdf)).[12]

---

[12] The hand book states [An employer may take] the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by

While DOL opinion letters and handbook may be entitled to persuasive authority *Holder v. MJDE Venture, LLC*, CIVA 1:08-CV-2218-TW, 2009 WL 4641757 (N.D. Ga. Dec. 1, 2009) (dealing with four hours of work during closing and allegations of not being paid), this has concept was rejected by the *Pellon* court and affirmed by the 11th Circuit as being such division of non-tipped duties during the work day as infeasible. *Pellon,* 528 F. Supp. 2d at 1314.  The court in *Holder* and more particular *Ash* reviewed the hours of duties performed during store closing periods. The court in *Ash* specifically considered the clock-in and clock-out times to determine if the duties were substantial and exceeded the scope of any temporal limitation. The undisputed facts here fall squarely with that in *Ash.*

The detail of Ide's employment hours have been provided by the Declaration of Jerry Killinger. **Ide never had a shift where her hours after the posted restaurant closing times exceeded 20% of her shift.** Of the 402 days Ide was

---

themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for time spent in such duties.

employed by Apple Creek during the three years preceding the filing of her complaint, Ide had only 11 days where she was clocked in during the morning before the restaurant posted opening hours for more than 20% of her day. These times were minimal as they ranged from an additional two minutes to nine minutes. Most courts have found daily periods of approximately ten minutes *De Minimis* even though otherwise compensable. *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984), *Burks v. Equity Grp.-Eufaula Div*., LLC, 571 F. Supp. 2d 1235, 1247 (M.D. Ala. 2008). These minimal days are what is referred to as slippage and are fairly characterized as *De Minimus*. *Bridges v. Amoco Polymers, Inc*., 19 F. Supp. 2d 1375, 1380 (S.D. Ga. 1997)

## D.   *Tip Credit Notice*

Ide alleges posters and handbooks are insufficient to inform employees of the use of a tip credit satisfying the minimum wage notice. The allegations of Ide and undisputed facts do not support Ide's claim. Ide only states that the tip credit was not fully explained to her and relies upon *Kilgore,* 160 F.3d at 299 arguing that posters are not sufficient to provide tip credit notice.[13] This is not the holding of

---

[13] The DOL regulations issued on April 5, 2011, 29 C.F.R. § 531.59(b) did not change the notice requirement.  The statue does not require employers to explain the tip credit; only inform employees about the law. *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42, 59 (D.D.C. 2012) appeal dismissed, 12-5209, 2012 WL 3244056 (D.C. Cir. Aug. 1, 2012). Further this is not a retroactive regulation. *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 685 (D. Md. 2012).

*Kilgore* as the handbook provided by the employer and posters were sufficient. Further in *Pellon,* the court held posters were sufficient. Before its new notice, Apple Creek used multiple posters, a handbook, tip pool agreement, and verbal information at orientation.

"Essentially, an employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations. Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." [citation omitted] (citing *Kilgore,* 160 F.2d at 298-300). To 'inform' an employee requires less effort than it would to 'explain' the tip credit to the employees. *Kilgore,* 160 F.3d 294, at 298. . . .  Department of Labor regulations explicitly require employers to post 'a notice explaining the [FLSA minimum wage provisions].' 29 C.F.R. § 516.4. Because it would defy logic to require the display of inadequate information regarding the minimum wage and employer tip credit, a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice." *Pellon,* 528 F. Supp. 2d at 1310.

As noted, the new regulations do not alter this premise under *Pellon* or *Kilgore*. Further this regulation does not require notice to the employee to be in writing. *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42, 58 (D.D.C. 2012) <u>appeal</u>

dismissed, 12-5209, 2012 WL 3244056 (D.C. Cir. Aug. 1, 2012). Apple Creek added to its notice process a notice signed by employees that essentially copied the new C.F.R regulation. Its previous notices all complied as the employee handbook provided the language out of 203(m), tip pooling notice, with one poster as the Department of Labor poster and another specifically dealing with tip credits as well as this being discussed in orientation.

## E.      *Willfulness and Two Year Statute of Limitations*

Even though Ide's claims fall short of any legal claim as are within the scope of the tip credit occupation, Ide's claims prior to February 16, 2011 are time barred. "Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the [plaintiff] must prove that the employer's conduct was willful as that term is defined in both *Thurston.*" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S. Ct. 1677, 1682, 100 L. Ed. 2d 115 (1988)  A violation of the FLSA is "'willful'" if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S. Ct. 613, 625, 83 L. Ed. 2d 523 (1985)

"To withstand Defendant's motion for summary judgment, then, Plaintiff must have raised evidence from which a jury could infer that the three-year

limitations period should apply—i.e., that Defendant 'willfully' violated FLSA, either by acting with knowledge that its conduct violated FLSA or with reckless disregard for the matter of whether its conduct violated FLSA. *McLaughlin*, 486 U.S. at 133. A showing of mere negligence will not suffice—an employer who acts unreasonably in failing to pay an employee overtime compensation to which he is entitled does not act 'willfully' unless his conduct amounts to recklessness. *Id*." *Kirkland-Brown v. Amelia Island Care Ctr*., 3:10-CV-1000-HES-MCR, 2012 WL 2178854 (M.D. Fla. June 13, 2012) "The only reference to any allegedly willful violations of the FLSA by Defendants is a conclusory allegation of willfulness in the Complaint absent any facts to substantially the same." *Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008).

There is no evidence here to support a willful violation by Apple Creek. Ide's allegations that she scrubbed toilets in violation of Apple Creek's policy do not support a willful claim. "Dishwashing, food preparation, kitchen and bathroom cleaning, [and] trash removal" may fall within the scope of a tipped occupation if such does not involves a substantial amount of time. *Roberts*, 945 F. Supp. 2d at 100. At most, based on Ide's allegations of closing servers cleaning toilets in 2010, she would have worked 17 shifts that included time after the restaurant posted closing hours, nine of which were less than 35 minutes after closing time. These 17

shifts are outside of the applicable statute of limitations. As pointed out above, these allegations do not fall outside of the tip credit occupation. Ide did not spend substantial time on these duties as the undisputed evidence reveals.

**III.**   **Conclusion**

Apple Creek shows that there is no genuine dispute as to any material fact entitling it to judgment as a matter of law as to: Ide's claim that she performed duties outside the scope of a tip credit occupation; any potential claim that Ide performed substantial time outside tip producing duties; Ide's claim that she was not properly informed of the tip credit provisions; and any claim Ide makes outside of two years preceding the filing of her complaint.

**CERTIFICATION**

The undersigned hereby certifies that this brief has been prepared with Times New Roman font, 14 point, as approved by the court pursuant to LR 5.1B.

Respectfully submitted this 12th day of March, 2014.

**DAVIDSON, FULLER & SLOAN, L.L.P.**

**By:  /s/ Stephen P. Fuller**

| | |
|---|---|
| 10475 Medlock Bridge Road | Ga. Bar No. 280336 |
| Suite 820 | Attorney for Apple Creek Management |
| Johns Creek, Georgia 30097 | Company, Inc.. |
| 770-622-4700 | |
| spf@dfslaw.com | |

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ANDREA IDE, on behalf of herself and all other persons similarly situated, known and unknown,

      Plaintiff,

      vs.

NEIGHBORHOOD RESTAURANT PARTNERS, LLC and APPLE CREEK MANAGEMENT COMPANY, INC.,

      Defendants.

CIVIL ACTION FILE NO.:

1:13-cv-00509-SCJ

## CERTIFICATE OF SERVICE

This is to certify that I have filed the foregoing MEMORANDUM IN SUPPORT OF APPLE CREEK MANAGEMENT COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT with this Court's CMECF and notice will be provided to the following attorneys of record:

      Amanda A. Farahany
      Douglas M. Werman
      Jamie G. Sypulski
      Sara J. Arendt
      V. Severin Roberts
      Louisa J. Johnson
      Noah A. Finkel
      Arthur J. Rooney

So served this 12th day of March, 2014.

**DAVIDSON, FULLER & SLOAN, L.L.P.**


**By:    /s/ Stephen P. Fuller                    **
   **Stephen P. Fuller**
   Ga. Bar No. 280336

10475 Medlock Bridge Road
Suite 820
Johns Creek, Georgia 30097
(770) 622-4700
spf@dfslaw.com