UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANDREA IDE, on behalf of herself and all other persons similarly situated, known and unknown, | |
| Plaintiff, | CIVIL ACTION No. 1:13-cv-00509-SCJ |
| v. | |
| NEIGHBORHOOD RESTAURANT PARTNERS, LLC, and APPLE CREEK MANAGEMENT COMPANY, INC., | |
| Defendants. | |

## O R D E R

This matter is before the Court on Defendants Apple Creek Management Company, Inc.'s ("ACMC") and Neighborhood Restaurant Partners LLC's ("NRP") (collectively "Defendants") Joint Motion for Leave to File a Memorandum in Excess of 25 Pages [Doc. No. 54], Plaintiff Andrea Ide's ("Plaintiff") Motion for Leave to File a Reply in Excess of 15 Pages [Doc. No. 57], Defendants' Motion to Submit Supplemental Authority [Doc. No. 65], Defendants' Motion to Submit Supplemental Authority [Doc. No. 66], Plaintiff's Motion for an Order to Authorize Notice to Similarly-Situated Persons [Doc. No. 51], and Plaintiff's Motion to Stay Briefing on ACMC's Motion for Summary Judgment [Doc. No. 63]. For the reasons explained

in this order, Defendants' motion for leave, Plaintiff's motion for leave and Defendants' motions to submit supplemental authority are **GRANTED**, Plaintiff's motion for conditional certification is **DENIED**, and Plaintiff's motion to stay briefing is **DISMISSED AS MOOT**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

ACMC owned and operated 40 Applebee's restaurants throughout north Georgia (the "Applebee's restaurants") until October of 2011 [Doc. No. 51, 3]. On or about October 13, 2011, NRP bought, and subsequently began to operate, the Applebee's restaurants from ACMC [*id.*].

From May 2002 until February 2013, Plaintiff worked at one of the Applebee's restaurants, located in Lawrenceville, Georgia, as a server, bartender, and host [*id.* at 4]. While employed by Defendants in the aforementioned positions, Plaintiff was paid on a "tip credit" wage rate pursuant to § 203(m) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* [Doc. No. 22, 4]. As she was paid a "tip credit" wage rate under the FLSA, Plaintiff received a cash hourly wage below the federal minimum wage rate [*id.*].[1]

---

[1] The FLSA requires an employer to pays its employees a minimum wage. 29 U.S.C. § 206(a). However, as an exception to the minimum wage requirement, "an employer may pay an employee a cash wage below the minimum wage . . . so long as the employer supplements the difference with the employee's tips; this is known as an employer taking

On February 15, 2013, Plaintiff initiated this action under the FLSA, on behalf of herself and other current and former tip credit employees of the Applebee's restaurants, seeking "earned minimum wages" [Doc. No. 1, 2]. In her original complaint, Plaintiff alleges that Defendant required its tip credit employees "to perform duties outside the scope of tipped occupations, while paying those employees at the tip-credit wage rate" [*id.* at 6]. Plaintiff further alleges in the original complaint that Defendants violated the FLSA by failing to inform its tip credit employees of the "tip credit subsection of the Act" [*id.* at 2]. Based on these allegations, Plaintiff's original complaint seeks all unpaid minimum wages earned by Defendants' tip-credit employees "for a period of three years" [*id.* at 7].

In response to Plaintiff's original complaint, Defendants each filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. No. 17, 1; Doc. No. 18, 1]. In accordance with Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff timely filed an amended complaint on April 11, 2013 [Doc. No. 22, 1]. The amended complaint, like the original complaint, seeks unpaid minimum wages allegedly owed to Defendants' tip credit employees "for a period of three years" [*id.* at 7]. The amended complaint additionally seeks attorneys' fees

---

a 'tip credit.'" *Rubio v. Fuji Sushi & Teppani, Inc.,* No. 6:11-cv-1753-Orl-37TBS, 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013) (citing 29 U.S.C. § 203(m)).

and costs and "liquidated damages in an amount equal to the amount of unpaid minimum wages" [*id.*]. As they were directed towards Plaintiff's original complaint, the undersigned, pursuant to Plaintiff's amended complaint, dismissed Defendants' respective motions to dismiss as moot [Doc. No. 40, 2].

NRP filed an answer to Plaintiff's amended complaint on April 29, 2013 [Doc. No. 24, 12]. Thereafter, Plaintiff and Defendants filed a joint preliminary report and discovery plan that requests a 10 month discovery period [Doc. No. 27, 6]. This joint preliminary report and discovery plan further articulates that all motions, other than motions that have a specific filing deadline under the local rules, "must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery" [*id.* at 5]. On June 6, 2013, the undersigned entered a scheduling order adopting the time limits articulated in the joint preliminary report and discovery plan and granting the parties' request for a 10 month discovery period [Doc. No. 29, 1-2].

On January 15, 2014, Plaintiff filed a motion to conditionally certify this case as a collective action under the FLSA [Doc. No. 51, 1]. Defendants filed their respective responses to this motion on February 10, 2014 [Doc. No. 55, 1; Doc. No. 56, 1]. In addition, Defendants contemporaneously filed a joint motion for leave to file responses that exceed the 25 page limitation articulated by the local rules [Doc.

-4-

No. 54, 1]. Plaintiff subsequently filed a reply brief in support of her motion for conditional collective action certification on February 24, 2014 [Doc. No. 58, 1]. Along with this reply brief, Plaintiff contemporaneously filed a motion for leave to file her reply brief in excess of the 15 page limitation articulated by the local rules [Doc. No. 57, 1]. Defendants subsequently filed two motions for leave to submit supplemental authority in the form of decisions by this Court regarding conditional certification under the FLSA [Doc. No. 65, 1; Doc. No. 66, 1]. Both of these decisions were issued after Defendants' respective responses were filed [Doc. No. 65-1, 2; Doc. No. 66-1, 1].

ACMC filed a motion for summary judgment on March 12, 2014 [Doc. No. 60, 2]. In lieu of filing a response, Plaintiff filed a motion to stay briefing on ACMC's motion until a ruling is made on her motion for conditional certification [Doc. No. 63, 1]. In addition, Plaintiff and NRP filed a joint motion to extend their respective deadlines to file a motion for summary judgment or proposed consolidated pre-trial order until a ruling is made on Plaintiff's motion for conditional certification [Doc. No. 61, 1]. The undersigned entered an order granting Plaintiff's and NRP's joint motion on March 13, 2014 [Doc. No. 62, 1].

II.   **DEFENDANTS' MOTION FOR LEAVE TO FILE RESPONSE BRIEFS OVER THE 25 PAGE LIMITATION AND PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY BRIEF OVER THE 15 PAGE LIMITATION**

Again, Defendants filed a joint motion for leave to file responses to Plaintiff's motion for conditional certification that exceed the 25 page limitation [Doc. No. 54, 1]. Plaintiff also filed a motion for leave to file a reply brief in support of her motion for conditional certification that exceeds the 15 page limitation [Doc. No. 57, 1]. Neither of these motions are opposed. As there is no opposition, and for good cause shown, the undersigned determines the aforementioned motions for leave should be granted. Accordingly, Defendants' Joint Motion for Leave to File a Memorandum in Excess of 25 Pages [Doc. No. 54] and Plaintiff's Motion for Leave to File a Reply in Excess of 15 Pages [Doc. No. 57] are hereby **GRANTED**. Therefore, the undersigned considers in full Defendants' respective responses [Doc. No. 55; Doc. No. 56] and Plaintiff's reply brief [Doc. No. 58].

III.  **DEFENDANTS' MOTIONS FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY**

After filing their respective responses to Plaintiff's motion for conditional certification, Defendants filed a joint motion to submit supplemental authority on April 17, 2014 [Doc. No. 65, 3]. Attached with this motion is an opinion issued by a colleague of the undersigned regarding the issue of conditional certification under

the FLSA [Doc. No. 65-1, 1]. Defendants filed a similar motion on April 30, 2014 [Doc. No. 66, 1], again attaching a recent opinion regarding conditional FLSA certification that was issued by a colleague of the undersigned [Doc. No. 66-1, 1].

These motions function more in the way of a *notice* of supplemental authority, rather than a formal motion. Consistent with a notice of supplemental authority, the undersigned, in reviewing Plaintiff's motion for conditional certification, considers the aforementioned opinions attached to Defendants' motions to submit supplemental authority. Accordingly, for the sake of clarity in the record, Defendants' Motion to Submit Supplemental Authority [Doc. No. 65] and Defendants' Motion to Submit Supplemental Authority [Doc. No. 66] are hereby **GRANTED**.

## IV.   <u>PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION UNDER THE FLSA</u>

Generally, district courts within the Eleventh Circuit use a two-stage process when deciding whether to certify a collective action under 29 U.S.C. § 216(b). *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The first stage is the "conditional certification" or "notice" stage, which requires an employee to show a reasonable basis that there are similarly situated employees that should be given

notice of the action. *Id.* at 1260-61.[2] At the notice stage, district courts in the Eleventh Circuit, relying on the pleadings and affidavits submitted by the parties, apply a "fairly lenient standard" that "typically results in 'conditional certification' of a representative class." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). After conditional certification, potential class members receive notice of the FLSA action and, therefore, have an opportunity to opt into the class. *Id.*

The second stage, which usually occurs towards the close of discovery, is generally precipitated by an employer's motion for decertification. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). At this second stage, because discovery is largely complete, "the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* (citation omitted).

Here, however, it is unclear whether the more lenient standard articulated in *Hipp* is applicable to Plaintiff's motion for conditional certification. Specifically, "*Hipp* envisions that the certification process will begin early in the litigation prior

---

[2]  Unlike class actions under Rule 23 of the Federal Rules of Civil Procedure, where all qualifying class members are party-plaintiffs unless they "opt-out" of the action, "[p]articipants in a § 216(b) collective action must affirmatively opt into the suit." *Id.* at 1258. Because proper notice of an FLSA action is necessary as a result of this opt-in/opt-out distinction, the Eleventh Circuit uses the two-stage process articulated in *Morgan* in certifying a collective action.

to discovery and, thus, gives plaintiffs some leeway in proof at the initial stage." *Pickering v. Lorillard Tobacco Co., Inc.*, No. 2:10-CV-633-WKW, 2012 WL 314691, at *9 (M.D. Ala. Jan. 30, 2012). Therefore, some courts within the Eleventh Circuit have determined that "[t]he rationale for the 'fairly lenient standard' [at the notice stage] . . . disappears, however, once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures." *Davis v. Charoen Pokhand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004); *see also Ledbetter v. Pruitt Corp.*, Civil Action No. 5:05-CV-329(CAR), 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007) (stating that, because the motion for conditional certification was filed two weeks after the discovery period expired, the case was "is in a different procedural posture than that envisioned by *Hipp*, and therefore a more searching standard of review is appropriate.").

In this case, as Plaintiff was able to engage in more than eight months of discovery before filing her motion for conditional certification, the undersigned believes that a heightened standard of review is necessary. This makes logical sense, as the lenient standard articulated in *Hipp* is in place to facilitate the filing of motions for conditional certification early in the litigation process. More specifically, the leniency standard articulated in *Hipp* exists so that conditional certification motions

can be adjudicated before significant discovery has taken place, thereby allowing the

parties to know whether or not discovery should concern potential opt-in plaintiffs.

To apply the leniency standard articulated in *Hipp* to Plaintiff's motion would

effectively encourage future plaintiffs to withhold filing a motion for conditional

certification until late in the discovery period. The undersigned is unwilling to

establish such a precedent.[3] [4]

---

[3] The undersigned further acknowledges that the parties did not specifically address the deadline for Plaintiff to file her motion for conditional certification. Instead, the parties' joint preliminary report and discovery plan states that all motions, other than motions that have a specific filing deadline under the local rules, "must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery" [Doc. No. 27, 5]. Obviously, as she did not file her motion for conditional certification until January 15, 2014, Plaintiff greatly exceeded this 30 day deadline. Therefore, Plaintiff's motion for conditional certification is potentially due to be dismissed as untimely. However, in response to Plaintiff's motion for conditional certification, Defendants do not address this timeliness issue. As Defendants do not raise a timeliness argument, the undersigned addresses Plaintiff's motion for conditional certification on the merits rather than dismiss it as untimely.

[4] Plaintiff argues a heightened standard should not be applied to her motion because "Defendants refused to answer discovery directed to other similarly-situated tipped employees" [Doc. No. 58, 11]. However, as this case has not been conditionally certified as a collective action, Defendants were not obligated to respond to such discovery requests. *See Crawford v. Dothan City Bd. of Educ.*, 214 F.R.D. 694, 695 (M.D. Ala. 2003) (stating that discovery requests directed towards potentially similarly situated employees is premature when "no collective action has been conditionally certified."). Again, conditional certification is generally determined early in the litigation process to allow parties knowledge of the full extent of relevant discovery. More to the point, conditional certification is generally determined before the discovery period so that a defendant knows whether or not it is obligated to respond to discovery regarding other potential opt-in plaintiffs. Therefore, Plaintiff's argument regarding Defendant's discovery responses is without merit.

While certain district courts have applied a stricter standard at the notice stage than the one articulated in *Hipp*, it does not appear a court has articulated the exact standard of proof applicable to a motion for conditional certification filed after extensive discovery has taken place. *See Pickering*, 2012 WL 314691, at *9 (stating that, in applying a "stricter, more searching, standard of review than that advocated in *Hipp*" to a motion for conditional certification, "the court need not define precisely where along the continuum of proof this case lies."). Likewise, the undersigned will not attempt to define the exact parameters of a heightened standard that is applicable to all motions for conditional certification filed after extensive discovery has taken place.[5] However, for this specific action, the undersigned determines Plaintiff must present sufficient evidence that establishes there are similarly situated employees that should receive notice of this action. In short, Plaintiff cannot simply rely on the allegations in the amended complaint and her own affidavit, as is typical under the leniency standard described in *Hipp*. Further, the undersigned considers evidence presented by Defendants in opposition to Plaintiff's motion for conditional certification.

---

[5] In fact, the undersigned acknowledges that a heightened standard applicable to all conditional certification motions may not be possible, as the strength of any heightened standard may shift based on the amount of discovery that has taken place in a given action.

In this case, Plaintiff seeks conditional certification of a proposed class that consists of a broad group of individuals. Specifically, Plaintiff seeks conditional certification of a proposed class that consists of all "current and former tipped employees" of the Applebee's restaurants "for the time period beginning three years prior to Plaintiff filing her Complaint, through February 4, 2013" [Doc. No. 51, 5]. To support her assertion that the individuals in this proposed class are similarly situated, Plaintiff makes the following two arguments: 1. Defendants, during the relevant time period, did not properly inform its tip credit employees of the tip credit exemption articulated in 29 U.S.C. § 203(m); and 2. All of Defendants' tip credit employees, during the relevant time period, were required to perform duties outside their tipped occupation for an improper amount of time. Below, the undersigned addresses each of these arguments in turn.

>    1.   **The evidence in the record establishes Defendants provided proper notice of 29 U.S.C. § 203(m) to their tip credit employees**

During the relevant time period, both ACMC and NRP provided associate handbooks to their employees that articulate the tip credit requirements of 29 U.S.C. § 203(m) [Doc. No. 56-10, 2-3; Doc. No. 56-28, 2]. Further, Defendants maintained in the Applebee's restaurants a poster issued by the Wage and Hour Division of the U.S. Department of Labor (the "Wage and Hour Poster") that informs their

-12-

employees of tip credit pay [Doc. No. 56-12, 1]. Defendants argue that their associate handbooks and the Wage and Hour Poster, *inter alia*, provided its tip credit employees with adequate notice of 29 U.S.C. § 203(m). In its reply brief, Plaintiff appears to concede that Defendants' tip credit employees had access to these associate handbooks and the Wage and Hour Poster [Doc. No. 58, 20]. However, Plaintiff maintains that the language of these associate handbooks and the Wage and Hour Poster do not provide *adequate* notice of the requirements of 29 U.S.C. § 203(m) [*id.*].

As an initial matter, the undersigned acknowledges that, to properly provide notice to its employees of the tip credit provision of 29 U.S.C. § 203(m), an employer needs to merely "inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations." *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007). Therefore, "[e]mployers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." *Id.* (citation omitted). Here, Defendants' respective associate handbooks contain the following language:

> Employers of tipped employees must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an associate's tips combined with the cash wage of at least

> $2.13 per hour do not equal the minimum wage, the employer must
> make up the difference

[Doc. No. 56-10, 2-3; Doc. No. 56-28, 2]. The undersigned is convinced that this language appropriately *informed* Defendants' tip credit employees of the requirements of 29 U.S.C. § 203(m). Also, the undersigned determines that the Wage and Hour Poster properly informed Defendants' tip credit employees of the tip credit exemption because "a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice." *Pellon*, 528 F. Supp. 2d at 1310. In summary, Plaintiff's argument that Defendants' associate handbooks and the Wage and Hour Poster provided insufficient notice of the tip credit requirement of 29 U.S.C. § 203(m) is without merit.

### 2. Plaintiff does not present sufficient evidence to establish all of Defendants' tip credit employees, during the relevant time period, performed an improper amount of non-tipped related work

Plaintiff alleges that all of Defendants' tip credit employees "are regularly assigned to perform non-tipped duties like food preparation and other 'back of the house' tasks" [Doc. No. 51, 6]. More specifically, Plaintiff maintains that Defendants' tip credit employees, during the relevant time period, had cleaning duties such as "rinsing garbage can lids, cleaning the coffee and tea area, cleaning the dressings

-14-

cooler, wiping pans, and wiping down the waitbay" [*id.* at 13]. Plaintiff further maintains that Defendants' "[s]ervers and bartenders also were required to perform food preparation duties, including making salad dressings, cutting fruit, preparing tea and coffee, making simple syrup, and cooking bacon" [*id.* at 17]. Therefore, Plaintiff argues that Defendants' former and current tip credit employees are owed full minimum wage compensation for their time spent performing non-tip related tasks during the relevant time period.

As Plaintiff acknowledges, a tip credit employee can spend up to 20 percent of his work time performing non-tip related duties without losing his exemption from full minimum wage compensation. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880-81 (8th Cir. 2011). Therefore, for conditional certification of her proposed class, Plaintiff must establish Defendants' tip credit employees, during the relevant time period, spent more than 20 percent of their work time performing non-tip related duties. To that end, Plaintiff presents NRP's "See You Tomorrow" policy which states "[i]t is [NRP's] company policy that each Server, Bartender and Host spends a minimum of 85% of any shift directly related to serving Guests needs" [Doc. No. 51-4, 64]. Plaintiff argues that NRP implemented the "See You Tomorrow" policy as an attempt to "remediate unlawful policies" [Doc. No. 51, 23]. More specifically,

-15-

Plaintiff maintains one can infer that the "See You Tomorrow" policy, which was implemented in early 2013, only articulates this 85 percent time requirement because Defendants' tip credit employees were previously spending more than 20 percent of their work time on non-tip related duties. The undersigned is unwilling to draw such an inference.

Defendants' respective associate handbooks contain the following language: "A tipped service associate should spend no more than 20% of their total working time performing these Guest service related duties during operating hours" [Doc. No. 56-10, 3; Doc. No. 56-28, 2]. Therefore, throughout the relevant time period, Defendants articulated that their tip credit employees should spend no more than 20 percent of their time doing non-tip related activities. The "See You Tomorrow" policy merely strengthens this internal regulation, which itself complied with the tip credit minimum wage exemption. More to the point, the fact that NRP implemented the "See You Tomorrow" policy does not establish Defendants' 20 percent limitation on non-tipped work was ignored throughout the Applebee's restaurants during the relevant time period. Therefore, the undersigned finds Plaintiff's argument regarding the "See You Tomorrow" policy unpersuasive.

Plaintiff further supports her argument by presenting evidence in the form of "sidework checklists," which allegedly outline non-tip related tasks Defendants' tip credit employees performed on a daily basis. Specifically, the sidework checklists state that Defendants' tip credit employees, in addition to performing tip credit work, must, *inter alia*, "[f]ill creamers and croutons," "[w]ipe off all shelves of the waitbay," "[f]ill the ice bin," and "[r]oll all remaining silverware" [Doc. No. 51-3, 5-6]. However, these sidework checklists also fail to establish the members of Plaintiff's proposed class are similarly situated for the purposes of Plaintiff's conditional certification motion for several reasons.

For one, Plaintiff concedes in her deposition testimony that she, rather than Defendants, actually created the sidework checklists she submits as evidence [Doc. No. 56-3, 32-34]. Therefore, these sidework checklists almost certainly constitute inadmissible evidence. However, setting this admissibility issue aside, Plaintiff further concedes in her deposition that she has no knowledge regarding the existence of sidework checklists in any of the Applebee's restaurants outside of the Lawrenceville location [*id.* at 35]. Therefore, Plaintiff admits that her sidework checklists do not concern, let alone establish, procedures and job related duties followed throughout the Applebee's restaurants. Further, with respect to the

-17-

Lawrenceville location, Plaintiff's sidework checklists do not establish the length of time Defendants' tip credit employees actually spent doing non-tip related work. Again, the performance of non-tipped work does not invalidate the tip credit minimum wage exemption unless it extends beyond 20 percent of an employee's work time. Therefore, the fact that Defendants' tip credit employees at the Lawrenceville location performed non-tipped duties for an undefined amount of time does not properly establish their entitlement to minimum wage compensation.

Plaintiff does not present sufficient evidence to establish that all of Defendants' tip credit employees spent more than 20 percent of their work time performing non-tip related duties. Therefore, individual inquiries would be necessary to determine which, if any, of Defendants' tip credit employees are entitled to minimum wage compensation for the relevant time period. As such individual inquiries will be necessary, certifying this case as a collective action would not aide in the resolution of common issues of law or fact. *See Morgan*, 551 F.3d at 1264 (stating that the purpose of a collective action, *inter alia*, is to efficiently resolve "common issues of law and fact that arise from the same [alleged] illegal conduct."). Accordingly, Plaintiff's Motion for an Order to Authorize Notice to Similarly-Situated Persons [Doc. No. 51] is hereby **DENIED**.

-18-

## V.   DEADLINES REGARDING SUMMARY JUDGMENT MOTIONS

Again, ACMC filed a motion for summary judgment on March 12, 2014 [Doc. No. 60, 2]. Rather than file a response, Plaintiff filed a motion to stay briefing on ACMC's motion until a ruling is made on her motion for conditional certification [Doc. No. 63, 1]. As explained *supra*, Plaintiff's motion for conditional certification is denied. Accordingly, Plaintiff's Motion to Stay Briefing on ACMC's Motion for Summary Judgment [Doc. No. 63] is hereby **DISMISSED AS MOOT**. Plaintiff is hereby **DIRECTED** to file a response to ACMC's motion for summary judgment [Doc. No. 60] within **21 days** from the date of this order. If ACMC feels a reply brief in support of its motion for summary judgment is necessary, such a reply must be filed within **14 days** after service of Plaintiff's response.

The undersigned further notes that Plaintiff's and NRP's deadline to file a motion for summary judgment or consolidated pre-trial order is stayed until a ruling is made on Plaintiff's motion for conditional certification [Doc. No. 62, 1]. Again, Plaintiff's motion for conditional certification is denied, thereby lifting the aforementioned stay. Further, discovery in this matter concluded on February 10, 2014. Therefore, if Plaintiff and NRP wish to file a motion for summary judgment, such a motion is due within **30 days** from the date of this order. In the event such a

motion for summary judgment is filed, any response or reply regarding said motion must be filed in accordance with the deadlines articulated under Local Rule 7.1. Alternatively, if neither party files such a motion, Plaintiff and NRP must file their proposed consolidated pre-trial order within **30 days** from the date of this order.

## VI.   <u>CONCLUSION</u>

For the above stated reasons, Defendants' Joint Motion for Leave to File a Memorandum in Excess of 25 Pages [Doc. No. 54], Plaintiff's Motion for Leave to File a Reply in Excess of 15 Pages [Doc. No. 57], Defendants' Motion to Submit Supplemental Authority [Doc. No. 65], and Defendants' Motion to Submit Supplemental Authority [Doc. No. 66] are hereby **GRANTED**. Plaintiff's Motion for an Order to Authorize Notice to Similarly-Situated Persons [Doc. No. 51] is hereby **DENIED**. Plaintiff's Motion to Stay Briefing on ACMC's Motion for Summary Judgment [Doc. No. 63] is hereby **DISMISSED AS MOOT**.

Plaintiff is hereby **DIRECTED** to file a response to ACMC's motion for summary judgment [Doc. No. 60] within **21 days** from the date of this order. If ACMC feels a reply brief in support of its motion for summary judgment is necessary, such a reply must be filed within **14 days** after service of Plaintiff's response.

If Plaintiff and NRP wish to file a motion for summary judgment, such a motion is due within **30 days** from the date of this order. In the event such a motion for summary judgment is filed, any response or reply regarding said motion must be filed in accordance with the deadlines articulated under Local Rule 7.1. Alternatively, if neither party files such a motion, Plaintiff and NRP must file their proposed consolidated pre-trial order within **30 days** from the date of this order.

**IT IS SO ORDERED**, this  8th  day of July, 2014.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE