IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANDREA IDE, on behalf of herself
and all other persons similarly
situated, known and unknown,

      Plaintiff,

v.

NEIGHBORHOOD RESTAURANT
PARTNERS, LLC, and APPLE
CREEK MANAGEMENT
COMPANY, INC.,

      Defendants.

CIVIL ACTION FILE

NO. 1:13-CV-509-MHC

## ORDER

This case comes before the Court on Defendant Apple Creek Management

Company, Inc.'s Motion for Summary Judgment [Doc. 60] and Plaintiff Andrea

Ide's Motion for Summary Judgment [Doc. 73].

## I.    BACKGROUND

Defendant Apple Creek Management Company ("Apple Creek") owned and

operated forty Applebee's restaurants throughout north Georgia (the "Applebee's

restaurants") until October 2011.  See Apple Creek's Statement of Undisp. Mat.

Facts [Doc. 60-10] ("Apple Creek's SMF") ¶ 1.[1]  On or about October 13, 2011,

Defendant Neighborhood Restaurant Partners, LLC ("Neighborhood") bought, and

subsequently began to operate, the Applebee's restaurants from Apple Creek.

Ide's Statement of Undisp. Mat. Facts [Doc. 73-2] ¶¶ 2, 4.

From May 2002 until February 2013, Plaintiff Andrea Ide ("Plaintiff" or

"Ide") worked at one of the Applebee's restaurants, located in Lawrenceville,

Georgia, as a server, bartender, and host.  Apple Creek's SMF ¶ 2.  While

employed by Defendants in these positions, Plaintiff was paid on a "tip credit"

wage rate pursuant to § 203(m) of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, et seq.  First Am. Compl. [Doc. 22] ("Am. Compl.") ¶ 14.  Because

---

[1] All References to Apple Creek's Statement of Undisputed Material Facts are those facts which were admitted by Ide.  See Pl.'s Resp. to Apple Creek's Statement of Undisp. Mat. Facts [Doc. 74].  Similarly, all references to Ide's Statement of Undisputed Material Facts are those facts which were admitted by Apple Creek and Neighborhood.  See Apple Creek's Resp. to Ide's Statement of Undisp. Mat. Facts [Doc. 76]; Neighborhood's Resp. to Ide's Statement of Undisp. Mat. Facts [Doc. 80].  The Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party.  LR 56.1B(2), NDGa.  The Court has excluded assertions of facts by either party that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number).  Id., LR 56.1B(1).  The Court has also viewed all evidence and factual inferences in the light most favorable to Plaintiffs, as required on a defendant's motion for summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Research, Inc., 711 F.3d 1264, 1270 (11th Cir. 2013).

2

she was paid a "tip credit" wage rate under the FLSA, Plaintiff received a cash hourly wage below the federal minimum wage rate. Id.

On February 15, 2013, Plaintiff initiated this action under the FLSA, on behalf of herself and other current and former tip-credit employees of the Applebee's restaurants, seeking "earned minimum wages." Compl. [Doc. 1] ¶ 2. In her original complaint, Plaintiff alleges that Defendants required its tip credit employees "to perform duties outside the scope of tipped occupations, while paying those employees at the tip-credit wage rate." Id. ¶ 6. Plaintiff further alleges in the original complaint that Defendants violated the FLSA by failing to inform its tip credit employees of the "tip credit subsection of the Act." Id. ¶ 2. Based on these allegations, Plaintiff's original complaint seeks all unpaid minimum wages earned by Defendants' tip-credit employees "for a period of three years." Id. ¶ 7.

In response to Plaintiff's original complaint, each Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Docs. 17, 18.] In accordance with Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff timely filed an amended complaint on April 11, 2013. The amended complaint, like the original complaint, seeks unpaid minimum wages allegedly owed to Defendants' tip credit employees "for a period of three years."

Am. Compl. at p.7. The amended complaint additionally seeks attorneys' fees and costs and "liquidated damages in an amount equal to the amount of unpaid minimum wages." Id. As they were directed towards Plaintiff's original complaint, the Court, pursuant to Plaintiff s amended complaint, dismissed Defendants' motions to dismiss as moot. [Doc. 40.]

On January 15, 2014, Plaintiff filed a motion to conditionally certify this case as a collective action under the FLSA. [Doc. 51.] Apple Creek filed a motion for summary judgment on March 12, 2014. [Doc. 60.] In lieu of filing a response to Apple Creek's motion for summary judgment, Plaintiff filed a motion to stay briefing on Apple Creek's motion until a ruling was made on her motion for conditional certification. [Doc. 63.] In addition, Plaintiff and Neighborhood filed a joint motion to extend their respective deadlines to file a motion for summary judgment or proposed consolidated pre-trial order until a ruling was made on Plaintiff's motion for conditional certification. [Doc. 61.] The Court entered an order granting Plaintiff and Neighborhood's joint motion on March 13, 2014. [Doc. 62.]

On July 8, 2014, the Court denied Plaintiff's motion for conditional certification. [Doc. 68.] Following motions for extension, and orders granting such motions, Plaintiff filed her own motion for summary judgment on September

4

12, 2014. Pl.'s Resp. to Apple Creek's Mot. for Summ. J., and Mem. in Supp. of

Pl.'s Mot. for Summ. J. on Liability on the Non-Tipped Duties Claim [Doc. 73-1]

("Plaintiff's MSJ"). Both motions are now fully briefed.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a).  A party seeking summary judgment has the burden of informing

the district court of the basis for its motion, and identifying those portions of the

record which it believes demonstrate the absence of a genuine issue of material

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Credibility

determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions," and cannot be made by the district

court in considering whether to grant summary judgment.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins.

Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must

present evidence that shows there is a genuine issue of material fact or that the

movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324.  In

determining whether a genuine issue of material fact exists to defeat a motion for

5

summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party.  Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999).  A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles.  Anderson, 477 U.S. at 248.  A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  Id.

"If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

### A.   Side Work Duties

At the heart of the motions for summary judgment is the question of whether the side duties Plaintiff performed were "related" to her tip-credit duties.[2]  Apple

---

[2] Though Ide intended this as a class-action lawsuit, the Court denied her motion for conditional certification. [Doc. 68.]  Thus, although Ide makes some allegations in her complaint and pre-denial motion for summary judgment related to what tasks other employees perform, the only relevant tasks for the purposes of the Court's decision are those actually performed by Ide herself.

6

Creek utilized Front of the House employees and Back of the House employees.

Front of the House employees were paid on a tip credit wage.  Back of the House

employees engaged in duties that did not involve customer service and were paid at

or above minimum wage depending on their job function and experience.  Apple

Creek's SMF ¶ 6.  Ide was employed as Bartender where she earned $3.00 to $5.00

per hour plus tips; Server where she earned $2.13 to $3.13 an hour plus tips; Host

where she earned $4.00 per hour plus tips; Expediter where she earned $8.75 to

$9.50 per hour; and The "To Go" position where she earned $7.25 an hour plus

tips.  Id. ¶ 4.  There is no allegation that Ide received less than minimum wage after

receiving her tips.  Id. ¶ 5.

Ide complains that Apple Creek used the tip credit wage while she

performed non-tipped duties.  Am. Compl. ¶ 16. These duties included cleaning

duties, food preparation, expediting their own food while no expediter (the

"Expo") was available, taking to-go orders, and duties while the restaurant was not

open.  Apple Creek's MSJ at 3.  Apple Creek claims these duties are intertwined

within the scope of the tip credit positions.  Id.  Ide references a list (created by Ide

herself) of duties (commonly referred to as side work charts) for four stations

including Expo, Coffee/Tea, Dressings and Waitbays as non-tipped duties she

performed.  Id. at 3-4.

7

Working opening shifts involved six to seven servers setting up the stations, and making sure their assigned table sections were ready for guests. Id. at 4. Apple Creek states the morning setup period took less than thirty minutes, and did not involve food preparation, but did involve stocking items at the stations and making the stations ready for customer service (including cutting lemons, which "only took a few minutes," taking dressing from a bag and putting it into a container, "receiv[ing] tomatoes cut from the kitchen," "receiv[ing] the bacon needed for the day from the kitchen" and, on "not typical" occasions, microwaving the bacon which only took "a couple of minutes"). Id. at 4-6. Generally, a non-tipped employee served as Expo. Id. at 8. According to Apple Creek, during peak hours with no Expo, a manager would step in to handle the line; only during slow periods did servers take the food for their customers out of Expo. Id. at 8-9. Closing-shift servers were responsible for a ten-point table check of their tables and breaking down their stations, which took, according to Apple Creek, between fifteen minutes and an hour. Id. at 8.

Hosts, similarly, arrived thirty minutes early, and stocked the host stand; during their shift, hosts would greet and seat guests, provide menus and silverware

to guests, keep the front-door window clean, and do a bathroom check.[3]  Id. at 7;
Apple Creek SMF ¶¶ 20-21.  They did not work past closing times or have closing
duties.  Id. ¶ 21.

Morning-shift bartenders were scheduled to arrive one hour before opening,
and stocked beer, cut fruit, made mixes, and got ice that would be needed for the
shift.  Apple Creek's MSJ at 7; Apple Creek's SMF ¶ 22.  They kept the bar area
and bar glasses clean.  Apple Creek's MSJ at 7; Apple Creek's SMF ¶ 23.  After
closing, bartenders cleaned the bar area, which took less than thirty minutes.
Apple Creek's MSJ at 7-8; Apple Creek's SMF ¶23.

Any need to fill sani-buckets (a task of which Ide complains) was
accomplished by pressing a button, which took only a few seconds.  Id. at 6; Apple
Creek's SMF ¶ 14.  Further, servers and hosts did roll silverware in advance and
throughout the day to comply with Health Department regulations.  Apple Creek's
MSJ at 6-7.

Apple Creek argues that its policy was that it should take no more than thirty
minutes before the restaurant opens or closes to complete any side work needed for
the day, and that no more than twenty percent of tip-credit employees' duties

---

[3] The parties dispute whether Ide had to clean bathrooms prior to late 2010.  Apple
Creek SMF ¶ 21; Pl.'s Resp. to Apple Creek SMF ¶ 21.

should be spent performing such duties during the day. Id. at 5. Apple Creek also states that servers generally did not work both opening and closing shifts. Id. On July 18, 2011, an email was sent to the restaurant management staff reminding them of Apple Creek's policy against the use of tip credit employees for substantial cleaning. Id. at 10. Apple Creek states that any toilet-scrubbing by Ide ended by the end of 2010 (outside the limitations period). Id. According to Apple Creek, in none of Ide's seventeen 2010 closing shifts was she at the restaurant for more than twenty percent of her time after closing. Id. at 11.

Ide argues adamantly that the additional duties she had were <u>not</u> related to her tipped position. <u>See, e.g.</u>, Ide's MSJ at 3. Specifically, she takes issue with being required to perform "food preparation duties and general cleaning duties." Id. at 4. She asserts the burden of proof is on the employer to establish its entitlement to the tip credit. Id. at 5 (citing <u>Auer v. Robbins</u>, 519 U.S. 452, 462 (1997); <u>Barcellona v. Tiffany English Pub, Inc.</u>, 597 F.2d 464, 467 (5th Cir. 1979)).

### 1.    Burden of Proof

The Fair Labor Standards Act requires employers to pay employees a minimum hourly wage. 29 U.S.C. § 206(a)(1). "The FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers."

10

Klein v. Rush-Presbyterian-St. Luke's Med. Ctr., 990 F.2d 279, 282 (7th Cir. 1993) (citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

A "tipped employee" is a person "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added); Fast, 638 F.3d at 876. An employee is "engaged" in a particular occupation only to the extent that she performs duties consistent with that occupation; job title alone does not suffice. See 29 C.F.R. § 541.2.

An employer of persons engaged in tipped occupations may pay those "tipped employees" less than minimum wage, taking a credit for the gratuities those employees receive from customers up to a maximum amount. 29 U.S.C. § 203(m); Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 876 (8th Cir. 2011). Under the FLSA, an employer of tipped employees must pay those employees a cash wage of $2.13 per hour; thus, the "tip credit" is $5.12, to equal the minimum wage, which currently is $7.25 per hour. Fast, 638 F.3d at 874.

An employer is entitled to take a tip credit only on the wages of employees who qualify as "tipped employees," and only if the employer: (1) pays the tipped employees the minimum required cash wage; (2) informs the tipped employees of the provisions of Subsection 3(m); (3) permits the tipped employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the tipped

11

employees' cash wage plus the tip credit equal at least the minimum wage.  29

U.S.C. § 203(m); Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 298

(6th Cir. 1998).

An employee who brings suit for unpaid minimum wages "has the burden of

proving that he performed work for which he was not properly compensated."

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87 (1946), superceded

by statute on other grounds, Portal–to–Portal Act of 1947, Pub. L. No. 49–52, § 5,

61 Stat. 84, 87 (May 14, 1947) (codified at 29 U.S.C. § 216(b)).  As long as the

employer has kept proper and accurate records, the employee "may discharge his

burden by securing the production of those records."  Id. at 687.

> [A]n employee has carried out his burden if he proves that he has in
> fact performed work for which he was improperly compensated and if
> he produces sufficient evidence to show the amount and extent of that
> work as a matter of just and reasonable inference.  The burden then
> shifts to the employer to come forward with evidence of the precise
> amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's
> evidence.

Id. at 687-88.  By contrast, an exemption under the FLSA is an affirmative

defense, and the employer bears the burden of proof to establish that an exemption

applies.  Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974).

Thus, as opposed to an exemption under the FLSA, the initial burden is on

Ide to show work for which she was improperly compensated.

12

### 2.     Deference to Regulatory Guidance

The Department of Labor ("DOL") has accepted that some tasks, although

not entailing customer interaction, may nonetheless be incidental to tip producing

duties.  Accordingly, the Department promulgated a regulation that provides that

performance of "related duties . . . in the tipped occupation" by the tipped

employee, if not substantial, would not bar tip credit entitlement.  29 C.F.R. §

531.56(e).  Thus, the tip credit is not lost if the employee spends "part of her time

cleaning and setting tables, toasting bread, making coffee and occasionally

washing dishes or glasses."  Id.  "Such related duties in an occupation that is a

tipped occupation need not by themselves be directed toward producing tips."  Id.

In 1980, in response to a request for guidance, the Wage and Hour Division

issued an opinion letter addressing whether certain tasks that servers in a restaurant

performed after closing still qualified for the tip credit.  In this letter, the DOL

recognized that duties that were related to a tipped occupation, as long as they were

not assigned to just one individual and the tasks were not exclusively the province

of a distinct, non-tipped occupation, constituted tipped employment.  See U.S.

Dep't of Labor, Wage and Hour Division, Opinion Letter WH–502, 1980 WL

141336 (March 28, 1980) (advising that time spent by a restaurant's tipped

employees to clean the salad bar, place condiments crocks in the cooler, clean and

13

stock the server station, clean and reset tables, and vacuum the dining room carpet, after the restaurant closed, "constituted tipped employment within the meaning of [29 C.F.R. § 531.56(e) ]" "insofar as the after-hours clean-up" was "assigned generally to the waitress/waiter staff").

The Wage and Hour Division's Field Operations Handbook (the "Handbook") also recognizes that servers may spend some time performing "general preparation work or maintenance" such as cleaning and setting tables, making coffee, and washing dishes and still remain engaged in a tipped occupation. DOL Handbook § 30d00(e). This is true even though these duties are not tip producing, provided the duties are incidental to the regular duties of the server, are generally assigned to the servers, and do not exceed twenty percent of their time. Id. There is no allegation in the Amended Complaint that only "specific employees" were routinely assigned to maintenance, preparatory, or closing duties. In contrast, the allegations suggest that these side duties were assigned to the wait staff at large. See, e.g., Am. Compl. ¶¶ 2, 15, 16.

In Fast, the court dealt extensively with the deference owed to DOL regulations. 638 F.3d at 877. The parties there, though agreeing that § 531.56(e)

was entitled to Chevron deference,[4] disagreed on its meaning (e.g., how to determine if an employee is engaged in dual jobs, or the definition of "related duties"); the court concluded that the regulation's "failure to address these questions makes it ambiguous." Id. (citing Barnhart v. Walton, 535 U.S. 212, 218 (2002)). The court noted that the Handbook clarifies that related duties "must be 'incidental to the regular duties of the server' and must be 'generally assigned to the servers;'" moreover, "'where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.'" Id. (quoting DOL Handbook § 30d00(e)). Further, the court discussed the Handbook's incorporation of prior opinion letters, including: (1) a waitress assigned to general after-hours cleaning was performing tipped work if the duties were assigned generally to all wait staff; and (2) a waiter performing opening work, where that waiter was the only one so assigned and spent thirty to forty

---

[4] Where a statute is clear on an issue, the court is to give effect to the unambiguous expressed intent of Congress, and where it is silent or ambiguous with respect to a specific issue, the court must defer to the agency's interpretation as long as the interpretation is reasonable, and must defer to the agency's regulation so long as it is not "arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).

percent of his shift performing the preparatory work, was not performing tipped work. Id. (citing Dep't of Labor, Wage & Hour Div., Op. Letter WH–502, 1980 WL 141336 (Mar. 28, 1980); Dep't of Labor, Wage & Hour Div., Op. Letter WH–FLSA–854 (Dec. 20, 1985)).

The Fast court concluded that, though not entitled to Chevron deference, the DOL's interpretation of § 531.56(e) was entitled to Auer deference (i.e., controlling unless plainly erroneous or inconsistent with the regulation).[5] Id. at 879. The court determined that the DOL's interpretation in the Handbook, which concludes that employees who spend "substantial time" (i.e., more than twenty percent) performing related but non-tipped duties should be paid at minimum wage for the time without the tip credit, is a reasonable interpretation of the regulation. Id.

Based on the above authority, a reasonable interpretation of § 531.56(e) is that Ide would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties.

### 3.    Dual Jobs

An employee may work for an employer in both a tipped and a non-tipped capacity. 29 C.F.R. § 531.56(e). An employee working in "dual jobs" is,

---

[5] See Auer, 519 U.S. at 461.

however, a "tipped employee" only during the time spent performing in the tipped position.  Id.; Fast, 638 F.3d at 876.  During the time the employee works in the non-tipped occupation, the employer must pay the employee full minimum wage. 29 C.F.R. §531.56(e).  Here, the Court concludes that Ide has failed to show she has substantially performed non-tipped duties and, thus, has failed to show she was employed in "dual jobs."

Other cases support this determination.  In Pellon v. Bus Representation Int'l, Inc., 528 F. Supp. 2d 1306 (S.D. Fla. 2007), aff'd, 291 F. App'x 310 (11th Cir. 2008), the court considered a motion for summary judgment in a case involving the duties of skycap employees.  The court concluded that skycaps "are most similar to waitresses under [DOL] regulations and that the non-tipped duties "are not those of another occupation, even if there is some overlap among tasks between different occupations.  They are, at worst, 'related duties in an occupation that is a tipped occupation' and they 'need not by themselves be directed toward producing tips.'"  Id. at 1313 (quoting 29 C.F.R. 531.56(e)).  The court discussed the impracticality of dividing the skycap's workday among the tasks and noted that there was no evidence of more than twenty percent of the workday being spent on non-skycap duties.  Id. at 1314.  The court concluded the tasks of which the plaintiffs complained (transporting luggage to TSA screening locations, assisting

17

disabled passengers, charging passengers for overweight or extra baggage, and collecting and reconciling baggage fees) were "part of the normal duties of a skycap." Id. This conclusion was not affected by whether any of these tasks were also performed by other airport employees. Id. at 1315. Ultimately, the court determined that the plaintiffs "unquestionably have more than a *de minimis* interaction with customers. Only where employees have no customer contact have they been found to fall outside the definition of tipped employees." Id.

In Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009), the district court found similar side work to be within the tip-credit position. The court there determined that the side work (including putting trays together, bringing down chairs, cleaning the bar area, ensuring the station was clean and equipped, filling or emptying ice buckets, and folding napkins) occurred when the plaintiff was clocked in and did not exceed twenty percent of her shift; thus, if the tip credit applied at all (which remained an issue due to questions of whether the tip pool was valid), it would apply for the side work as well. Id.

In this case, the side work performed by Ide is within the tip-credit position. Although a portion of Ide's work occurred before and after the restaurant opened, there are no allegations that she was not clocked in for the entirety of her shift. The duties Ide attempts to define food preparation (e.g., fruit slicing) appear to be

quite minimal.  Overall, this Court finds that Ide's side duties were, though not tip-producing in themselves, incidental to her tipped position.  Further, Ide failed to allege or argue that more than twenty percent of her time was spent on her side work.

The Court is not persuaded by the cases relied upon by Ide.  In <u>Dole v. Bishop</u>, 740 F. Supp. 1221 (S.D. Miss. 1990), the relevant employees generally reported to work from two to four hours before the restaurant opened, and the court determined that the waitresses spent a "substantial portion of their time in the afternoons before the restaurant opened" performing duties that were not incidental to their tipped duties, and determined they were entitled to minimum wage during these times.[6]  <u>Id.</u> at 1226-28.  In <u>Hodgson v. Frisch's Dixie, Inc.</u>, No. 6641, 1971 WL 837, at *3 (W.D. Ky. Aug. 16, 1971), the district court's determination of no tip credit was based on the fact that the employees were required to perform "non-tipped" work for "substantial periods of time during their shifts and occasionally

---

[6] The <u>Pellon</u> court questioned whether <u>Dole</u> was inconsistent with 29 C.F.R. 531.56(e), but concluded it need not determine the issue of consistency, because the <u>Dole</u> case was ultimately distinguishable from the situation in <u>Pellon</u>.  528 F. Supp. 2d at 1313.  The court concluded that, although <u>Dole</u> concerned a situation in which the time spent performing side duties occurred for roughly two to four hours before the restaurant opened, and was easily separable from the time performing tipped duties, the questionable tasks in the <u>Pellon</u> case were "intertwined with direct tip-producing tasks throughout the day."  <u>Id.</u>

[to spend] their complete shift in such work." In this case, unlike in <u>Dole</u> or

<u>Hodgson</u>, Ide was not required to perform non-tipped work for substantial periods

of time.

Ide relies heavily on <u>Driver v. AppleIllinois, LLC</u>, 739 F.3d 1073 (7th Cir.

2014), an opinion regarding class certification, in which the Seventh Circuit stated,

> But of course if the tipped employees also perform non-tipped duties (provided those duties are unrelated to their tipped duties—an important qualification, as we'll see), such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.

<u>Id.</u> at 1075. The alleged non-tipped tasks referred to by Ide do not fall into

the categories of "washing dishes, preparing food, mopping the floor, or

cleaning bathrooms." <u>Driver</u> also states that the DOL has determined that as

long as the tipped employee spends no more than twenty percent of his

workday doing non-tipped work related to her tipped work, the employer

need not pay the full minimum wage for the time the employee spends doing

that work. <u>Id.</u> (citing 29 C.F.R. § 531.56(e); U.S. Department of Labor,

Field Operations Handbook § 30d00(e) (June 30, 2000),

www.dol.gov/whd/FOH/FOH_Ch30.pdf).[7]

---

[7] In <u>Driver v. AppleIllinois, LLC</u>, 890 F. Supp. 2d 1008 (N.D. Ill. 2012), the underlying case from which leave to appeal was denied by the Seventh Circuit, the

20

As acknowledged in Judge Jones' earlier order, the Court finds that Ide's side work is related to her tipped occupation. See Order Denying Class Certification [Doc. 68] ("Class Cert. Order") at 15 (determining that, to establish a class of related individuals, Ide would have had to establish that "Defendants' tip-credit employees, during the relevant time period, spent more than 20 percent of their work time performing non-tip *related* duties.") (emphasis supplied).[8] Thus, without any showing that her time on the side work exceeded twenty percent of her time working, Ide is not entitled to the full minimum wage.

---

district court determined that a substantial amount of tipped employees' time was spent performing side tasks (ranging from preparing dressings, eggs, lemons, coffee, and iced tea to cleaning bathrooms and mopping). Id. at 1016, 1031-32. Ultimately, the court's decision rested not on whether the tasks were related to the tipped position, but on the amount of time spent on such tasks. For example, even if silverware rolling was considered "related," it was not tip-producing, and the court determined that up to twenty percent of non-tip-producing side work (whether related or not) could be acceptable before being considered dual jobs. Id. at 1033. Here, Ide has made no allegation that the amount of her time spent on side work exceeded twenty percent of her shifts.

[8] Ide disputes this earlier statement and believes that Defendants are obligated to pay tipped employees full minimum wage for *any* duty they perform, no matter how *de minimis*, that is unrelated to their tipped occupation. See Ide's MSJ at 3 n.1. The facts in this case show that Ide's side duties were incidental to her tipped position and were well under the twenty-percent level established by the DOL.

**B.      Time Spent on Side Work**

Apple Creek states that Plaintiff never had a shift where her hours after the posted restaurant closing time exceeded twenty percent of her shift. Apple Creek's MSJ at 20. It further states that only on eleven days were her pre-opening hours more than twenty percent of her shift, and these were "minimal as they ranged from an additional two minutes to nine minutes." Id. at 21 (citing Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984); Burks v. Equity Grp.-Eufaula Div., LLC, 571 F. Supp. 2d 1235, 1247 (M.D. Ala. 2008)) (discussing the *de minimis* doctrine in overtime cases).

Plaintiff has not challenged this argument, and nowhere even alleges that her time on side work did, in fact, exceed twenty percent of her shift. Thus, the Court need not determine whether or how the *de minimis* doctrine relates to tip-credit work.

**C.      Tip-Credit Notice**

Apple Creek states its posters and handbooks informing employees of the use of a tip credit satisfy the required notice. Apple Creek's MSJ at 21-23. Though Ide raised the issue of notice in her complaint, she failed to address Apple Creek's argument in its motion for summary judgment. Thus, she is deemed to have abandoned this claim. See, e.g., Clark v. City of Atlanta, Ga., 544 F. App'x

848, 855 (11th Cir. 2013) ("The district court, therefore, properly treated as abandoned the . . . claims, which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment."); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him.") (internal quotation marks and citation omitted).[9]

### D.    Willfulness and Statute of Limitations

Apple Creek contends that Ide's claims prior to February 16, 2011, are time-barred.  Apple Creek's MSJ at 23.  Ordinary FLSA violations are subject to a two-year statute of limitations; to obtain the three-year exception, Ide must prove her employer's conduct was willful.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 (1988).  An FLSA violation is considered willful if the employer knew or showed reckless disregard of whether its conduct was prohibited.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985).

Ide argues that, due to a memorandum from former Apple Creek president Stan Klaus, its managers knew prior to July 2011 that tipped employees were not to perform non-tip-related duties and, specifically, were not to perform general

---

[9] In fact, as the Court determined earlier, the record evidence establishes that Defendants did, in fact, provide proper notice.  See Class Cert. Order at 12-14.

cleaning or food preparation. Ide's MSJ at 20-21. Hence, according to Ide, a determination that she was forced to perform such duties could easily lead to a finding of willful conduct. Id. at 21.

Having determined that Ide is not entitled to full minimum wage for her side work duties and that no FLSA violation exists, the Court concludes there was no willful violation of the FLSA. Thus, Ide's motion for summary judgment is **DENIED** and Apple Creek's motion for summary judgment is **GRANTED**.

### E.   Neighborhood Restaurant Partners

Neighborhood did not move for summary judgment, or join in Apple Creek's motion. However, the Court is authorized to enter summary judgment *sua sponte* so long as the moving party was on notice that she had to come forward with all of her evidence and has had an adequate opportunity to demonstrate why summary judgment should not be granted. Celotex, 477 U.S. at 326; Burton v. City of Belle Glade, 178 F.3d 1175, 1204 (11th Cir. 1999). Clearly, Ide was on notice that she must bring forward all her evidence in response to Apple Creek's motion for summary judgment. Thus, the Court also **GRANTS** summary judgment in favor of Neighborhood, the subsequent purchaser of Applebee's restaurants from Apple Creek, and against Ide.

IV.   **CONCLUSION**

For the foregoing reasons, Defendant Apple Creek Management Company,

Inc.'s Motion for Summary Judgment [Doc. 60] is **GRANTED** and Plaintiff

Andrea Ide's Motion for Summary Judgment [Doc. 73] is **DENIED**.  Summary

Judgment is also **GRANTED** to Defendant Neighborhood Restaurant Partners,

LLC.  The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this _26th_ day of March, 2015.

Mark H. Cohen
United States District Judge

25